[No. E001361. Fourth Dist., Div. Two. Apr. 22, 1986.]

DOUGLAS A. HOFFMAN, Plaintiff and Appellant, v.
SPORTS CAR CLUB OF AMERICA et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

**COUNSEL**

Memel, Jacobs, Pierno, Gersh & Ellsworth and John F. Gerard for Plaintiff and Appellant.

Hillsinger & Costanzo, Darrell A. Forgey, Clifford R. Anderson III and Lori K. Smith for Defendants and Respondents.

Dummit & Agajanian, Cary Agajanian and Stephen L. Hewitt as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**McDANIEL, J.**—The appeal here is from a summary judgment, dismissing plaintiff's action for personal injuries sustained in a collision between so-called sports cars, one of which he was driving, during a sports-car race at Riverside International Raceway conducted under the auspices variously of certain of the several defendants (defendants).

Before entering the race, during which the collision occurred, plaintiff had participated, several weeks before, in at least two "race schools" designed to prepare persons to drive under racing conditions on racetracks. In each of these instances, he had signed similar agreements releasing defendants from liability for negligence. Also as part of preparation for the eventual race competition, where the collision occurred, plaintiff, while attending the race school, subscribed a contract with defendant California Sports Car Club Region, Inc., which provided, if plaintiff were accepted as a participant in the race competition, that he "must sign a release agreement at registration before entering the race." In compliance with this earlier contract, plaintiff, before the fateful race, signed a printed "Release and Waiver of Liability and Indemnity Agreement." The import of the release was to relieve the parties conducting the race, and any car owners and drivers

participating, from liability for injury caused by their negligence. In a separate paragraph the release provided that the subscribing participant "HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK of bodily injury . . . due to negligence of" those conducting the race. The document also included a recital that the plaintiff "COVENANTS NOT TO SUE" for injury caused by defendants' negligence. A noteworthy feature of the form of release used here was that the participant's signature was called for to be placed over and superimposed upon a printed legend which reads "I HAVE READ THIS RELEASE."

On appeal, besides attacking the enforceability of the release as a legal matter, plaintiff further contends that there were triable issues of fact raised by its filings in opposition. Notwithstanding this same contention to the trial court, the court looked upon the matter before it as involving only a legal issue, i.e., the enforceability of the release. As we shall explain later, we agree with the trial court's determination that this was the only issue before it. Moreover, in our view, the trial court correctly decided that the release agreement was legally enforceable, and so the judgment in favor of defendants will be affirmed.

### SYNOPSIS OF TRIAL COURT PROCEEDINGS

Plaintiff's complaint included seven counts. Only three of these alleged negligence on the part of those defendants who moved for summary judgment. These parties were those defendants who had sponsored and conducted the race plus the owner of the Corvette with which plaintiff's Porsche collided. A careful scrutiny of the counts addressed by the motion reveals that the principal charging allegation recited that the defendants "did so negligently or tortiously manage, control, monitor, organize, arrange, schedule, or conduct [the race], in that, among other things, said Defendants, and each of them, negligently and tortiously failed to comply with their own safety standards, policies, rules, guidelines, or regulations and negligently or tortiously failed to appoint or provide adequate and properly monitored supervised personnel to enforce said safety standards, policies, rules, guidelines, or regulations; and Defendants JIM BROWN THUMPER SPOILERS, RON CASSILE, DOES 201 through 420, inclusive, and each of them, did so negligently or tortiously entrust, control, own, possess, manage, maintain, drive or operate said BP Corvette, so that as a proximate result of said negligence or tortious conduct, the Porsche 911 was caused to collide with the BP Corvette, proximately resulting in a fire and explosion and in Plaintiff's injuries and damages alleged hereinafter."

Otherwise, the two counts directed solely at the owner of the Corvette charged him with negligently modifying and maintaining it, on the one hand, and with strict products liability on the other.

We have recounted the foregoing to demonstrate that the scope of the issues, at least as framed by the pleadings, did not extend to any alleged wanton misconduct pursued in reckless disregard for the safety of others. Moreover, nothing in the way of evidence of such misconduct was offered in opposition to the motion.

Defendants' answer of course denied the charging allegation and, as an affirmative defense, alleged the fact of the release "whereby the plaintiff released defendants of and from all liability . . . including the alleged causes of action set forth in the complaint . . . ."

After the case was at issue, depositions were taken and then, 14 months after filing their answer alleging the release as an affirmative defense, defendants noticed their motion for summary judgment. In support of their motion, defendants attached a number of exhibits, properly authenticated by declarations, consisting of: the release signed by plaintiff on March 22, 1980; the releases signed by plaintiff in favor of the race school on February 24, 1980, and March 8, 1980; of plaintiff's responses to defendants' request for admissions; plus various passages from plaintiff's deposition and that of John Jovanovich, the owner of the Porsche. The relevant showing represented by these documents established the facts surrounding the signing of the release as well as its content and layout, including the type size used to print it.

Plaintiff's opposition to the motion, while covering 78 pages in the clerk's transcript, included only one-and-a-half pages of declaration by one of the counsel for plaintiff. The purpose of the declaration was to authenticate certain exhibits attached, including portions of plaintiff's deposition and also that of Zvonimir Jovanovic (aka John Jovanovich). Of the elaborate and extensive points and authorities, four were addressed to legal issues involving the enforceability of the release, and one purported to urge that there were three issues of fact raised by plaintiff's opposition to the motion. These three included whether there had been: (1) excusable mistake in signing the release; (2) fraud in the inducement; and (3) undue influence applied in obtaining the release.

Upon hearing the argument of the motion, the court made it very plain that in its view the issue before it was entirely legal, i.e., that the filings in opposition had not included any materials which operated to raise triable issues of fact. Actually, the record of the argument includes the following:

"THE COURT: I am assuming almost as if this is a demurrer. The facts are the flag person should have flagged the person down and slowed it down. If it had slowed down, it would not have gone out of control.

"MR. GERARD: I think you have to assume that.

"THE COURT: I am assuming there is no question of fact. The Summary Judgment—and I think Counsel can say if I am wrong—relies solely on the release.

"MR. ANDERSON: That is correct.

"THE COURT: That is the only issue we have before us. So we have the same matter I have had presented on other cases as if it were a demurrer."

At the conclusion of the argument, the court announced from the bench that "I do grant the Summary Judgment." A formal order and judgment were later signed and filed; this appeal followed in due course.

## DISCUSSION

In support of his appeal, plaintiff makes seven assignments of error. Five of these are directed at particular legal aspects of the purported unenforceability of the release. Otherwise, plaintiff argues that the hearing of the motion for summary judgment resulted in a showing that the record presented three triable issues of fact. Finally, plaintiff contends that the trial court abused its discretion in not allowing a continuance to enable counsel to develop additional facts on the "fraud" and "undue influence" issues. Before turning to a discussion of the release, we shall first dispose of the latter two contentions which do not involve the enforceability of the release.

### I

While it is true that a moving party's burden on motion for summary judgment is only to negate the existence of triable issues of fact framed by the pleadings (*IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 451-452 [147 Cal.Rptr. 828]), the pleading scenario here is such that, before the foregoing proposition can be applied, a threshold question must be resolved. That question is "what issues were framed by these pleadings?"

Turning to the record, in response to plaintiff's pleading of a cause of action for personal injuries based on defendants' negligence, defendants, besides general denials per section 431.30 of the Code of Civil Procedure, pleaded as an affirmative defense that plaintiff executed a release exonerating them of liability in advance for the causes of action pleaded in the complaint, and assuming the risks complained of. In opposition to defendants' motion for summary judgment, which placed reliance on the enforceability of the release, plaintiff countered with an argument that the release

was infirm because obtained by fraud and undue influence. More particularly, plaintiff argued to the trial court that the presence or absence of these factors represented triable issues of fact which required that the motion be denied. Defendants' rejoinder to the trial court in support of the motion was that they were only required to negate issues of fact raised by the pleadings, and that plaintiff's complaint contained no allegation of fraud and undue influence incident to execution of the release.

In urging the same argument on appeal, i.e., that there were issues of fact raised before the trial court, plaintiff correctly argues that he is not required by his pleadings to anticipate defenses. In other words, looking ahead generally to the trial, for instance, he would not be precluded from introducing evidence to show that the release had been obtained by fraud or undue influence even though he had not pleaded such matters. This is so because there is no replication in California pleading; all allegations of affirmative matter in the answer are deemed controverted. (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 374, at p. 426.)

Moving then to a consideration of the consequences of this rule of pleading for the case here, the task of tabulating the issues framed by the pleading, for purposes of resolving a motion for summary judgment, imports a more complex threshold question, namely, "where the issues of fact are not framed as such by adversary pleadings, how are the 'deemed controverted' issues relative to affirmative matter in the answer effectively preserved for trial so as to require denial of the motion?"

Looking for an answer to this question has led us to *Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100 [44 Cal.Rptr. 268].

In *Hayward,* the court phrased the issue thus: ". . . the first question confronting this court is whether, where the plaintiff is the moving party and the cross-complaint alleges an affirmative defense, the affidavits filed in support of the motion must negate the affirmative defense." (*Id.,* at p. 117.) The question was answered: ". . . the party moving for summary judgment must show by affidavit that he is entitled to judgment on the issues raised by his pleading *and that the defenses thereto alleged by his opponent are sham and do not raise an issuable defense,* and until the moving party makes such a showing his opponent need not be put to a test on his affidavits, if any. However, if the movant does make such showing, then the opponent cannot rely upon the allegations of his pleading but must, apart from such pleading, show by his affidavits he has sufficient proof of the matters alleged to raise an issuable question of fact in regard thereto." (*Id.,* at p. 120.)

While the position of the parties moving for summary judgment here is reversed from that in *Hayward,* the posing of a cross-complaint which al-

leged an affirmative defense and the *Hayward* court's comments with reference thereto, as above quoted, suggest an answer to our question here. Even though they were not pleaded, fraud and undue influence are matters upon which plaintiff here, without objection, could offer evidence at the trial in an effort to prove that such matters vitiated his execution of the release. In so doing, in order to prevail on such issues, he would at least have to make out a prima facie case to resolve those issues in his favor. Similarly, if plaintiff is to preserve for trial such factual issues and thereby surmount successfully defendants' motion for summary judgment, it is incumbent upon him to present by declarations, or reference to other available probative evidence, sufficient factual recitations to make the same prima facie case on these issues as he would present at trial. In other words, it was not enough for plaintiff here simply to argue to the court that there had been fraud and undue influence incident to his signing the release; he was required to provide by declaration or reference to depositions, or other discovery product, sufficient facts to show prima facie the elements of fraud or undue influence.

Measured against this standard, the factual materials contained in plaintiff's filings in opposition do not even remotely establish a prima facie case for either fraud or undue influence.

Along this same line, because the agreement under consideration here only undertook to release defendants from liability for negligence, had plaintiff, at a later trial, sought to introduce evidence that defendants were guilty of wanton misconduct in reckless disregard of the safety of others, he would have been entitled to do so. Similarly, to preserve that issue of fact for trial, plaintiff would have had to make a prima facie showing of such misconduct as a part of his evidentiary opposition to defendants' motion for summary judgment. As with the supposed issues of fraud and undue influence, the excerpts from the depositions offered by plaintiff in opposition did not even remotely imply that kind of behavior. At most, it could be argued that a prima facie case for negligence was shown, but nothing more.

■ Otherwise, mistake as plaintiff has argued it, is not a viable ground for not enforcing the release. His position on this point we liken to a person who comments upon leaving the movie, "Had I known what it was about, I never would have bought a ticket." In sum, plaintiff cannot now claim he was mistaken about what was in the release when he failed to read it before signing it. (*Palmquist* v. *Mercer* (1954) 43 Cal.2d 92, 98 [272 P.2d 26].)

■ Based upon the foregoing analysis, we hold that plaintiff did not make the necessary showing to preserve any triable issues of fact relative to the three such matters for which he had contended.

■ In response to plaintiff's contention that it was error not to grant him a continuance for the purpose of pursuing discovery into the matters of fraud and undue influence, the trial court noted that plaintiff had had since *July 1981,* when defendants' answer was filed, to pursue such discovery on these issues, and so it was not an abuse of discretion to deny the request for the continuance made on *March 15, 1984.*

II*

·　·　·　·　·　·　·　·　·　·　·　·　·　·　·　·　·　·　·　·

DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Taylor, J.,† concurred.

---

*See footnote, *ante,* page 119.

†Assigned by the Chairperson of the Judicial Council.