[No. B152602. Second Dist., Div. Two. Jan. 7, 2003.]

WIZ TECHNOLOGY, INC., Plaintiff and Appellant, v.
COOPERS & LYBRAND LLP, Defendant and Respondent.

## COUNSEL

Rosen & Associates, Robert C. Rosen, John B. Wallace and David Paul Bleistein for Plaintiff and Appellant.

Latham & Watkins, Peter W. Devereaux, Stephen J. Newman and Amos E. Hartston for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—Appellant Wiz Technology, Inc. (Wiz), alleged various tort and contract causes of action against its auditor, respondent Coopers & Lybrand LLP (Coopers), for Coopers's purported improper resignation prior to completion of the 1996 audit and Coopers's refusal to permit Wiz to use the 1995 audit report to support its planned secondary securities offering. We find that summary judgment was properly granted in favor of Coopers for the following reasons: Coopers's resignation was justified by Wiz's breach of a material condition that required it to hire different counsel for securities matters; all claims relating to the 1995 audit report were time-barred; and, in any event, Wiz failed to produce any competent, nonspeculative evidence of proximate causation and damages. Moreover, the trial court did not err in denying Wiz's motion for reconsideration.

### FACTUAL AND PROCEDURAL SUMMARY

Wiz was a publicly traded company that developed and marketed inexpensive computer software games and educational programs for sale at various shops and discount stores. Wiz first offered its securities on public stock markets in February of 1994.

*Coopers's 1995 audit report for Wiz*

The accounting firm of Corbin & Wertz (Corbin) audited Wiz in the 1994 fiscal year. When Corbin resigned as Wiz's auditor after a disagreement over some accounting practices, Coopers agreed to perform Wiz's 1995 audit. In an engagement letter, described as a "letter of arrangement," Coopers agreed to "audit the financial statements of [Wiz] as of and for the [fiscal year] ending July 31, 1995, in accordance with generally accepted accounting standards," and to issue an audit report thereon.

Coopers also agreed to inform Wiz if any matters came to its attention representing "significant deficiencies in the design or operations of [Wiz's] internal control structure." The engagement letter did not commit to any future audits, but acknowledged that additional unforeseen "consultation or audit work" could require negotiation or an additional fee.

Coopers's 1995 audit report was completed and was included in Wiz's form 10-K filed with the Securities and Exchange Commission (SEC). The form 10-K related solely to the existing approximately 8,000,000 shares of Wiz common stock then registered for trading on public securities markets.

*Discussions and conditions regarding a possible 1996 audit report for Wiz*

Approximately four months later, in March of 1996, Coopers's partner Hal Hurwitz met for several hours with Arthur and Mar-Jeanne Tendler, husband and wife and respectively Wiz's president and chief executive officer. They discussed the conditions under which Coopers might continue its auditor relationship with Wiz and might audit Wiz's financial statements for the fiscal year ending July 31, 1996 (i.e., the 1996 audit). As indicated in a declaration by Hurwitz, he advised the Tendlers of the following three conditions to continue as auditor: Wiz had to replace its chief financial officer, Billie Jolson; Wiz had to pay Coopers's outstanding invoices (consistent with SEC auditor independence rules); and Wiz had to replace its existing securities attorney, Jehu Hand, with competent legal counsel because Hurwitz had concerns about Hand's understanding of various securities laws and regulations.

On behalf of Wiz, the Tendlers agreed to Coopers's three conditions. Regarding the attorney condition, Hurwitz also declared that he "learned" later that month that Wiz hired David Krinsky of O'Melveny & Myers as Wiz's securities counsel. And Hurwitz understood that Hand would no longer be involved in Wiz's securities matters or financial reporting. Wiz also satisfied the other two conditions by replacing Jolson with a new acting

chief financial officer, Melanie McCaffery, and it paid down its debt to Coopers.

Hurwitz documented Wiz's initial compliance with the three conditions in a contemporaneous report to Coopers's internal file on Wiz. In a statement to the SEC, the Tendlers also corroborated the existence of the three conditions, describing them as "three basic points," and the Tendlers admitted that Wiz "put in place the changes that Coopers requested." In verified discovery responses, Wiz again acknowledged that Hurwitz had informed the Tendlers of the three conditions, and that these conditions were "required." Wiz asserted in response to interrogatories that Hand could remain as counsel because of his long-standing relationship with and knowledge of the company, but that Wiz would also have to retain a large law firm. For several months, according to Wiz, it used the legal services of both Hand and O'Melveny & Myers.

Meanwhile, Wiz planned to register additional securities for trading on public markets. But in April of 1996, the SEC commenced an investigation of Wiz before those plans could be implemented. Upon discovering the SEC investigation, Coopers advised Wiz that until the investigation was resolved, Coopers did not consent to Wiz's using Coopers's 1995 audit report in connection with any further SEC filings. Wiz did not complete the securities offering planned for the spring of 1996, and was sued for, among other things, its failure to complete the offering. Ultimately an SEC investigation resulted in a consent judgment against the Tendlers, prohibiting them from engaging in securities fraud in the future and from acting as directors or officers of any public company, and requiring disgorgement of some financial gains.

Regarding the possibility of a 1996 audit by Coopers, Wiz and Coopers never signed any explicit agreement that Coopers perform a 1996 audit. As explained by Arthur Tendler, Hurwitz repeatedly promised to send a 1996 engagement letter and Coopers estimated the fee for the engagement at $85,000. But no engagement letter was ever prepared. And Wiz points to nothing in the record suggesting that it at any time agreed to pay the amount Coopers proposed. Hurwitz testified, "There were a lot of steps that would have had to be undertaken" before an engagement letter could have been prepared. Hurwitz emphasized that there could not have been an agreement to perform the 1996 audit without a signed engagement letter detailing all the terms of the engagement, just as there had been for the 1995 audit.

In August of 1996, Wiz employees counted Wiz's inventory. Coopers observed the inventory count. Coopers later was paid separately for this observation and for providing its paperwork to Wiz's successor auditor.

*Coopers's discovery that Wiz breached the attorney condition by using Hand as counsel for securities matters*

As Hurwitz declared in support of Coopers's subsequent motion for summary judgment, Hurwitz learned in August of 1996 that Wiz had resumed using Hand for securities matters because Hand was less expensive than Krinsky at O'Melveny & Myers. As Hurwitz testified during his deposition in response to questioning by Wiz's counsel, Hurwitz learned that Hand was again involved in securities matters during a telephone conversation with either Hand or McCaffery (Wiz's acting chief financial officer). Coopers filed and served this deposition evidence with its summary judgment moving papers. Wiz's use again of Hand instead of Krinsky for securities law was also specifically cited in Coopers's separate statement of facts.

In opposition to Coopers's motion for summary judgment, Wiz offered no declaration from Hand or McCaffery or any other evidence contradicting Hurwitz's account of how he learned of Hand's reinvolvement as counsel for securities matters. In Wiz's responding separate statement, it addressed the issue of counsel for securities matters. But Wiz primarily raised evidentiary objections to evidence of Hurwitz's discovery of the breach of the attorney condition (e.g., vague, irrelevant, hearsay, lacks foundation, etc.), and it did not dispute the essential facts asserted. Coopers emphasized in its reply brief Wiz's lack of any evidence disputing Hand's return as securities counsel, but Wiz still did not provide any counter evidence or request a continuance.

*Alleged damages and causation*

Because of Hand's reinvolvement as counsel for securities matters, on August 22, 1996, Coopers resigned as Wiz's independent public accountants. Wiz then hired the accounting firm of Grant Thornton LLP (Grant Thornton) to perform its 1996 audit.

The Tendlers asserted in declarations various damages from Coopers's refusal to perform the 1996 audit. They declared that Wiz was forced to pay Coopers for work that had to be repeated, to pay for additional work by Wiz's consultant (Melanie McCaffery, who had been hired to liaison with Coopers), and to pay attorneys for work related to Coopers's resignation. The Tendlers did not specify the exact nature of this additional or repeated work. The Tendlers also alleged in declarations (with no details or documentary support) that as a result of Coopers's resignation and Wiz's late audit, Wiz's market value declined from a negative stock market reaction, vendors stopped issuing credit, customers stopped purchasing, Wiz could not obtain

accounts receivable funding, an investment newsletter (Red Chip Review) downgraded Wiz, and Wiz could not fund internet and intranet markets it was entering.

After Coopers's resignation, the successor auditor, Grant Thornton, obtained Coopers's work papers regarding Wiz's inventory count that Coopers had observed in early August of 1996. Regarding other aspects of Wiz's 1996 audit, Jeffrey Hiltbrand, the Grant Thornton partner who oversaw the Wiz audit, explained in his declaration the following: "When Grant Thornton accepted the engagement to conduct the 1996 Audit, I anticipated that we would be able to complete all necessary work in order for Wiz to file its annual report on Form 10-K within the SEC prescribed deadlines . . . . Grant Thornton was unable to complete its work on a timely basis as initially anticipated because of the delays and difficulties encountered during the audit . . . . *These delays and difficulties were caused solely by Wiz . . . . The delays and difficulties Grant Thornton encountered during the 1996 Audit had nothing to do with WIZ's predecessor independent public accountants,* [*Coopers.*]" (Italics added.)

As Hiltbrand had also indicated in a letter to Arthur Tendler on October 31, 1996, the anticipated delay in filing the requisite form 10-K with the SEC was because of the delay in the audit, which was due to "incorrect accounting applications and errors in [Wiz's] records and failure of [the Wiz] staff to provide information on a timely basis." Hiltbrand never identified Coopers's resignation as having caused any delay. After receiving the letter from Hiltbrand, Tendler specifically accepted and acknowledged in writing Hiltbrand's description of events causing the delay.

On December 12, 1996, Grant Thornton resigned as Wiz's independent public accountants. Several days later, in a form 8-K filed with the SEC, Arthur Tendler explained that Grant Thornton had given the following reasons for its resignation: Wiz's lack of preparation for the audit; Wiz's issuance of an inaccurate press release about financial matters; Wiz's lack of understanding of the significance of certain financial matters; Wiz's failure to meet deadlines for providing information to Grant Thornton; and Wiz's failure to have the appropriate level of management or board oversight over accounting matters. None of these reasons were in any way related to Coopers's resignation.

On December 13, 1996, Wiz hired the accounting firm of Cacciamatta Accountancy Corporation (Cacciamatta) as its new independent public accountants. Cacciamatta was Wiz's fourth auditor in less than three years. Wiz presented no evidence from Cacciamatta to suggest that Wiz's financial difficulties were in any way related to Coopers's resignation.

On January 29, 1998, approximately 17 months after Coopers resigned, Wiz filed for bankruptcy protection. ▓▓▓ ■ ■ Approximately six months later, Wiz filed its complaint in the present case against Coopers, alleging, inter alia, causes of action for breach of written, oral and implied contracts, breach of the implied covenant of good faith and fair dealing, negligence, and negligent misrepresentation.[1]

*The summary judgment ruling in favor of Coopers, and Wiz's motion for reconsideration*

The trial court granted Coopers's motion for summary judgment, in large part on the grounds that it had good cause to resign as Wiz's auditor because it violated the condition to replace Hand as Wiz's securities counsel. It also found that there was no written, oral or implied contract for Coopers to perform the 1996 audit. And the court concluded there was no triable issue of fact regarding proximate cause and damages.

Thereafter, Wiz moved for reconsideration and filed supporting declarations from Hand and Wiz's counsel. Hand did not deny that he told Hurwitz that Wiz reengaged him for securities matters. Rather, Hand declared only that he never told Hurwitz "that O'Melveny & Myers was no longer going to be used by Wiz as its securities counsel." Moreover, the exhibits in support of Hand's declaration confirm that Hand did in fact perform securities work (approximately 60 hours) for Wiz in July and August of 1996, in violation of the attorney condition at issue.

Wiz's second declaration in support of its motion for reconsideration was from John Wallace, one of Wiz's trial counsel (and one of its counsel on appeal). Wallace asserted that he was surprised at the summary judgment hearing to discover that the paramount issue was the narrow question of whether Hurwitz had received information about Hand and O'Melveny & Myers, rather than the accuracy of that information. Wallace further declared that if he had realized the issue, he would have deposed McCaffery. Wallace also annexed to his declaration a page of McCaffery's testimony before the SEC and asserted that it supported "the inference that she did **not** make the statement which Mr. Hurwitz claims was made by [her]." (Original boldface.)

However, in the relied-upon page of McCaffery testimony in the SEC's securities fraud case against the Tendlers, she did not contradict Hurwitz's

---

[1]Other causes of action which survived demurrer were claims of misrepresentation of fact, promissory fraud, and suppression and concealment. On appeal, the only causes of action specifically addressed by Wiz are the alleged breach of written, oral and implied contracts. To the extent the contentions raised in the opening brief do not address all causes of action but relate to only some of them, issues as to the other causes of action are deemed abandoned. (See *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].)

testimony that either she or Hand told Hurwitz that Wiz had begun using Hand again for securities matters. Rather, McCaffery's testimony was simply that she did not recall speaking with Hurwitz about "what [Coopers] was doing in general terms." McCaffery did not deny speaking to Hurwitz about Hand; in fact, she was not questioned about the subject.

The trial court denied Wiz's motion for reconsideration. It found that Wiz had failed to give "a satisfactory reason for failing to present this evidence earlier," and that even if it considered the evidence, it did not raise a triable issue of fact such as to undermine the basis for the summary judgment.

DISCUSSION

I. *The trial court properly granted summary judgment.*

A. *The standard of review.*

■ Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we strictly scrutinize the moving party's papers. (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 549 [5 Cal.Rptr.2d 674].) The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1556 [8 Cal.Rptr.2d 552].) All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. (*Ibid.*)

A defendant moving for summary judgment meets its burden of proof of showing that a cause of action has no merit by establishing that one or more elements of the cause of action cannot be established, or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (*o*)(2).) This may be done, inter alia, by the defendant's "showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Once the defendant has done so, the burden shifts back to the plaintiff to show, not merely by allegations or denials, but by competent evidence, that a triable issue of one or more material facts exists as to the cause of action or defense in question. (Code Civ. Proc., § 437c, subd. (*o*)(2).)

The party opposing the summary judgment must make an independent showing by a proper declaration or by reference to a deposition or another

discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact if the moving party's evidence, standing alone, is sufficient to entitle the party to judgment. (*Sebastian International, Inc. v. Peck* (1987) 195 Cal.App.3d 803, 807 [240 Cal.Rptr. 911]; *Hoffman v. Sports Car Club of America* (1986) 180 Cal.App.3d 119, 126 [225 Cal.Rptr. 359].) To avoid summary judgment, admissible evidence presented to the trial court, not merely claims or theories, must reveal a triable, material factual issue. (*Torres v. Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].) Moreover, the opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation. (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 [1 Cal.Rptr.2d 636]; *Baron v. Mare* (1975) 47 Cal.App.3d 304, 309, 311 [120 Cal.Rptr. 675].)

Exercising our independent judgment to determine as a matter of law the construction and effect of the facts presented (*Spitler v. Children's Institute International* (1992) 11 Cal.App.4th 432, 439 [14 Cal.Rptr.2d 197]; *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1510-1511, 1513-1515 [285 Cal.Rptr. 385]), and acknowledging the obligation to affirm on any ground supported by the record (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1457 [81 Cal.Rptr.2d 165]), we find summary judgment was properly granted.

B.   *Coopers's resignation was justified by Wiz's failure to satisfy the condition that it forgo using Hand as counsel for securities matters, which was a prerequisite to any 1996 audit by Coopers.*

Wiz urges that the engagement agreement for the 1995 audit, coupled with the Tendlers' understanding that Hurwitz's verbal agreement to perform a 1996 audit and a projected cost estimate, reveals an agreement to perform a 1996 audit. However, even assuming arguendo there was a triable issue of fact as to the existence of a written, oral or implied contract with Coopers for a 1996 audit of Wiz, Coopers's resignation as Wiz's auditor was warranted and thus not a breach of any agreement to conduct a 1996 audit. Consistent with the intent of the parties (Civ. Code, § 1636; see *City of Stockton v. Stockton Plaza Corp.* (1968) 261 Cal.App.2d 639, 644 [68 Cal.Rptr. 266]), any contract as urged by Wiz necessarily was conditioned upon the three requirements communicated to Wiz in March of 1996.

The requirement at issue here was that Wiz forgo using Attorney Hand for securities matters. Specifically, Hurwitz insisted that Wiz replace Hand with competent legal counsel because Hurwitz was concerned about Hand's understanding of securities laws and regulations. This condition was so

important that Hurwitz explained to the Tendlers that Coopers would not be associated with any SEC filings of Wiz with which Hand was associated. In verified discovery responses, Wiz acknowledged that Hurwitz had informed the Tendlers of the three conditions, and that these conditions were "required." Indeed, Wiz briefly did retain the legal services of O'Melveny & Myers for securities law matters, but reverted to using Hand for securities matters because he was less expensive.

The attorney condition was a critical requirement. Wiz itself recognized the importance of the condition, admitting in its interrogatory responses that Coopers told Wiz in March of 1996 that Coopers "required" that Wiz obtain replacement counsel for securities matters. The Tendlers also told the SEC that Coopers made a "specific request" of Wiz to obtain replacement counsel. Wiz's use of Krinsky, counsel at a major law firm, further establishes that Wiz at the time considered the condition material.

Moreover, Coopers presented undisputed evidence that professional standards required an auditor to evaluate the reliability of the audited client's specialists, such as a securities lawyer, whose work involves "[i]nterpretation of technical requirements, regulations, or agreements." Under certain circumstances, if an auditor is not satisfied that such a specialist is reliable, the auditor is precluded by the professional standards of accountancy from rendering an unqualified opinion as to the client's financial statements. The attorney condition in the present case, requiring the removal of Hand as counsel in securities matters, was therefore important to ensure the quality and preserve "the integrity of [Wiz's] financial reporting process," serving "the public trust" even "above the client's stated objectives." (*National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 426, fn. 9 [72 Cal.Rptr.2d 720], citing the American Institute of Certified Public Accountants, Professional Standards.)

It is well settled that the breach of an important condition may excuse the other party from performance. (Civ. Code, § 1439.) "A party complaining of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations." (*Pry Corp. of America v. Leach* (1960) 177 Cal.App.2d 632, 639 [2 Cal.Rptr. 425].) To the extent admissible evidence at the summary judgment stage established that Coopers learned that Wiz breached the attorney condition, Coopers was therefore relieved of any obligation to perform the 1996 audit.

The parties thus focus in this appeal on whether Wiz's breach of the attorney condition was supported by admissible, nonhearsay evidence. We review de novo the trial court's overruling of Wiz's hearsay objection (see

*Williams v. Saga Enterprises, Inc.* (1990) 225 Cal.App.3d 142, 149, fn. 2 [274 Cal.Rptr. 901]) and find it properly admitted Hurwitz's evidence regarding Wiz's breach of the attorney condition.

Contrary to Wiz's contention, Hurwitz's uncontradicted evidence that he learned of Wiz's breach of the attorney condition from either Hand or McCaffery did not constitute inadmissible hearsay. As Coopers aptly urges, it "offered the evidence of what Hurwitz learned from Hand or McCaff[er]y for a non-hearsay purpose—the good faith of [Coopers's] decision to resign." The point of Hurwitz's testimony was not the truth of the matter asserted. (Evid. Code, § 1200, subd. (a).) In other words, the purpose of the testimony was not to establish whether the breach of the attorney condition was revealed to Hurwitz by Hand or McCaffery.

Rather, Hurwitz's nonhearsay testimony was used to establish that Coopers's resignation was in good faith and thus reasonable and under the circumstances for good cause. Indeed, Wiz's assertion that the reason for Coopers's resignation was the SEC investigation of Wiz, not breach of the attorney condition, is indicative of the importance of the good faith and reasonableness of Coopers's resignation.

It is reasonable and permissible for an auditor to resign for good cause. (*National Medical Transportation Network v. Deloitte & Touche, supra,* 62 Cal.App.4th at pp. 429-431 [discussing instructional error regarding resignation with good cause because it was consistent with accountancy professional standards].) "Where the reasonableness of a person's conduct is at issue, statements of others on which he acted are admissible." (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 265 [76 Cal.Rptr.2d 382]; see also 1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 44, p. 726.)

Coopers thus established through Hurwitz that its resignation could not have been in breach of any contract because it was reasonable and with good cause; i.e., that Hurwitz in good faith believed that Wiz had breached the agreement. And a resignation with good cause and based on a good faith belief in certain facts was also relevant to negate Wiz's allegations in its negligence causes of action. Wiz's complaint alleged that Coopers purportedly lulled Wiz into believing it would perform the 1996 audit and purportedly made certain unspecified false, misleading and deceptive representations. Hurwitz's good faith belief that Wiz had breached the agreement would establish purposeful conduct based on good cause and thus negate such negligence claims.

Accordingly, since the evidence complained of was not hearsay and was properly relied upon by the court, it is unnecessary to address Coopers's

alternative argument that what Hurwitz heard constituted a hearsay exception because it was an admission (Evid. Code, § 1222) by Wiz through an agent (i.e., through Hand as Wiz's attorney, or McCaffery as Wiz's chief financial officer). Because Wiz's hearsay contention is without merit and it offered no countervailing evidence to refute the good cause for Coopers's resignation, the trial court properly granted summary judgment in favor of Coopers.

C.  *Coopers's refusal to allow the use of its 1995 audit report for a new securities filing was not actionable.*

Coopers refused to consent to the use of its 1995 audit report in connection with Wiz's secondary stock offerings because the SEC was investigating Wiz. Coopers presented evidence that professional standards supported its decision, and Wiz offered no expert opinion or other evidence to the contrary. Indeed, Coopers's position was in retrospect arguably well taken, as an SEC investigation against the Tendlers resulted in a stipulated judgment against them for securities law violations.

Wiz's complaint alleged that Coopers's denial of consent to use its 1995 audit report to support secondary stock offerings was "wrongful and unjustified" and it briefly addressed the matter in its opening brief on the issue of damages. However, Wiz has failed to link Coopers's denial of consent to any particular cause of action.

To the extent Coopers's denial of consent to use its 1995 audit report for a secondary stock offering relates to a cause of action for breach of oral or implied contract or any professional negligence, such a claim is barred by the statute of limitations. Regardless of what legal theory is urged, any claim would be governed by a two-year statute of limitations. (Code Civ. Proc., § 339, subd. 1; see *Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 499 [86 Cal.Rptr.2d 536]; *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1206-1207 [51 Cal.Rptr.2d 328].)

Wiz knew that Coopers had refused consent to use the 1995 audit report in the spring of 1996. And Wiz acknowledged in its second amended complaint that at least by June 5, 1996, Wiz purportedly suffered damages arising out of Coopers's refusal to let Wiz use the 1995 audit report in federal securities filings. But Wiz did not file suit until July 31, 1998, more than two years later. Accordingly, all claims based on Coopers's refusal to consent to the use of the 1995 audit report are time-barred.

D.  *Wiz has failed to show any competent evidence of causation and damages attributable to Coopers.*

In response to a motion for summary judgment, the plaintiff must present concrete evidence of proximate causation and damages. (*Saelzler v.*

*Advanced Group 400* (2001) 25 Cal.4th 763, 767, 775-776 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) Summary judgment will be upheld where the plaintiff's evidence is little more than guesswork " 'in the realm of mere speculation and conjecture.' " (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 490 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

The only evidence Wiz points to in support its theories of proximate causation and damages are the Tendlers' declarations. The Tendlers alleged a loss of 48 days of audit time after Coopers resigned and the use of time searching for a successor auditor. But any delay was of no consequence, as Hiltbrand declared without contradiction that Coopers's resignation did not impair Grant Thornton's ability to complete the audit in a timely fashion.

The Tendlers also asserted, without any specific amounts alleged or instances cited, that Wiz was forced to pay Coopers for work that needed to be repeated by the successor auditor, Grant Thornton. But there was absolutely no evidence supporting the allegation that Grant Thornton had to redo any work Coopers did, or that Wiz was billed twice for the same work. Wiz did not identify any particular piece of work as having to be redone, and Wiz did not point to any actual expense as having been incurred because of Coopers's resignation.

The Tendlers also claim that Wiz was forced to pay Coopers to assist the successor auditor and was forced to pay attorneys for work related to Coopers's resignation. However, Wiz has failed to identify any actual expense that was unnecessarily incurred due to Coopers's resignation.[2] In fact, regarding assistance to a successor auditor, such as providing work papers and the like, it is the professional duty of an auditor to cooperate with a successor auditor and respond to reasonable inquiries. (*National Medical Transportation Network v. Deloitte & Touche, supra,* 62 Cal.App.4th at pp. 428-429.) And the uncontroverted declaration of Grant Thornton partner Hiltbrand indicated that Coopers did everything that was professionally required.

The Tendlers also allege a negative reaction in the stock market and a loss of customers. However, no expert testimony or other evidence supported the

---

[2]Wiz refers to a copy of a check reflecting payment to Coopers. But neither the Tendlers nor the $42,942 check from Wiz to Coopers (dated September 18, 1996, and delivered two days later) indicated the services covered by that payment. And Coopers's letter to the Tendlers authorizing Grant Thornton access to Coopers's working papers was dated September 19, 1996, so the payment would not likely have been to Coopers for assistance to the successor auditor. Nor did Wiz present any documentary evidence showing any double payment, to Coopers and Grant Thornton, for the same work.

notion that Coopers's resignation was a factor in causing a negative stock market reaction—as opposed to, for example, a negative stock market reaction from Wiz's poor product sales or the Tendlers' violations of securities laws. And Wiz presented no evidence from its own records of the loss of any particular customer, and did not support from expert testimony or any other source any specific business lost or the value of any such loss.

Equally speculative and unavailing is the conjecture, based on the Tendlers' mere assertions, that Coopers's resignation resulted in the loss of accounts receivable funding, a loss of investor confidence, and the inability to fund an internet/intranet business. Wiz offered no evidence of from where it sought accounts receivable funding and who purportedly denied such funding. Regarding the downgrade of Wiz by an investment newsletter (the Red Chip Review), Wiz failed to submit a copy of the document, rendering reliance on the item inappropriate (see Evid. Code, §§ 1401, 1521, 1523), and presented no expert testimony or other evidence establishing the impairment of share value from such a newsletter downgrade. Regarding the allegation that because of Coopers's resignation Wiz was unable to fund an internet/intranet business, it is simply an unexplained allegation. We are again left to guess and speculate as to causation and damages.

Accordingly, the trial court aptly concluded that there was no admissible evidence to support Wiz's contention that Coopers's resignation caused the host of damages claimed in the Tendlers' declarations. The Tendlers' self-serving assertions of causation and damages constituted either opinion evidence, which they were unqualified to render, or amounted to mere guesswork and unsupported conjecture, which mandated summary judgment against them.

## II. *The trial court properly denied Wiz's motion for reconsideration.*

The trial court did not abuse its discretion (see *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 685-686 [68 Cal.Rptr.2d 228]; *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118 [95 Cal.Rptr.2d 113]) in denying Wiz's motion for reconsideration of the summary judgment in favor of Coopers. The motion was supported by declarations from Hand and Wiz's counsel, John Wallace. The motion focused on the issue of whether Hurwitz had been told by Hand or McCaffery that Wiz was again using Hand for securities law matters, violating a material condition of Coopers's continued work for Wiz.

First, Wiz's motion for reconsideration was filed one day beyond the statutory 10-day limitation period for filing a motion for reconsideration.

(Code Civ. Proc., § 1008, subd. (a).) This alone could support the trial court's denial of the motion.

Second, Wiz failed to meet its burden under Code of Civil Procedure section 1008, because the declarations did not provide any basis for reconsideration. Hand's declaration indicated merely that he never told Hurwitz "that O'Melveny & Myers was no longer going to be used by Wiz as its securities counsel." Significantly, Hand did not deny that he had told Hurwitz that Wiz had reengaged him for securities matters. The condition at issue was not simply, as Wiz apparently frames the matter, that a major law firm be used; rather, the condition was that Hand not be used as securities counsel because of questions about his competence. Thus, Hand's declaration did not address the real issue. And Wallace's declaration referencing a page of SEC testimony by McCaffery simply did not contradict Hurwitz's testimony that either McCaffery or Hand told Hurwitz that Wiz had begun again using Hand for securities matters.

Nor did the trial court abuse its discretion in ruling that even if Wiz's motion were considered under Code of Civil Procedure section 473, relief for mistake, inadvertence, surprise or excusable neglect would not be warranted. Section 473 cannot be used to remedy attorney mistakes, such as the failure to provide sufficient evidence in opposition to a summary judgment motion. (*Garcia v. Hejmadi, supra*, 58 Cal.App.4th at pp. 683-684.) "There is nothing in section 473 to suggest it 'was intended to be a catch-all remedy for every case of poor judgment on the part of counsel which results in dismissal.'" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611-612 [109 Cal.Rptr.2d 256].) Counsel's failure to understand the type of response required or to anticipate which arguments would be found persuasive does not warrant relief under section 473. (See *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1399-1402 [72 Cal.Rptr.2d 188].)

Here, Wiz could not have been "surprised" because Hurwitz's deposition testimony was presented with Coopers's summary judgment moving papers. Any failure by Wiz's counsel to understand or appreciate the significance of the evidence does not justify relief under Code of Civil Procedure section 473. Also, the trial court correctly found that Wiz had failed to show reasonable diligence in seeking evidence from Hand and McCaffery any time during the three years of litigation leading up to the summary judgment hearing.

There simply was no excusable neglect or unfair surprise to Wiz, no dispositive information from Hand, and no new facts of any relevance from

McCaffery or any other source. Wiz also failed to attack all grounds relied upon by the trial court for granting summary judgment (e.g., lack of causation and damages). Wiz thus rendered ineffectual its motion for reconsideration because even if the arguments raised in the motion were meritorious, Wiz could not show that "a different result would have been probable." (Code Civ. Proc., § 475.)

Accordingly, the trial court did not abuse its broad discretion in denying Wiz's motion for reconsideration.

DISPOSITION

The judgment is affirmed.

Nott, J., and Doi Todd, J., concurred.

On February 6, 2003, the opinion was modified to read as printed above.