[No. B210211. Second Dist., Div. Four. Apr. 22, 2010.]

BARBARA WHITMIRE et al., Plaintiffs and Appellants, v.
INGERSOLL-RAND COMPANY et al., Defendants and Respondents.

COUNSEL

Waters Kraus & Paul, Michael B. Gurien and Paul C. Cook for Plaintiffs and Appellants.

Hassard Bonnington, Robert M. Hamblett, Philip S. Ward; Reed Smith, Dennis Peter Maio, Paul D. Fogel and Margaret A. Grignon for Defendants and Respondents.

OPINION

**WILLHITE, J.—**

## INTRODUCTION

Plaintiff Barbara Whitmire, on her own behalf and as successor in interest to husband Jimmie Whitmire (Whitmire) (collectively plaintiffs), appeals

from a summary judgment granted in favor of defendants Bechtel Corporation and Bechtel Construction Company (collectively Bechtel) on plaintiffs' complaint for, inter alia, negligence and strict liability related to Whitmire's exposure to asbestos. We affirm the trial court's judgment because plaintiffs failed to establish a triable issue of fact regarding whether Whitmire was exposed to asbestos for which Bechtel was responsible.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the background of the case, and reserve our detailed discussion of the evidence relevant to summary judgment until our Discussion, below.

From 1961 to 1993, Whitmire was employed as an electrician at Pacific Gas and Electric (PG&E) powerplants. After he contracted mesothelioma, plaintiffs sued Bechtel, among other defendants, alleging that Whitmire had contracted mesothelioma from exposure at the powerplants to asbestos-containing products for which defendants were responsible.

Whitmire worked for PG&E at three locations in Northern California—Contra Costa Powerhouse in Antioch (1961–1966 and 1969–1985), Pittsburg Powerhouse in Pittsburg (1966–1969), and Moss Landing Powerhouse in Moss Landing (1985–1993). Although in the complaint plaintiffs alleged that he had been exposed to asbestos as a result of Bechtel's conduct at all three sites, in opposition to Bechtel's motion for summary judgment, plaintiffs produced no evidence that Whitmire was exposed to asbestos at either the Pittsburg or Moss Landing plants. And on appeal, they do not contend that Whitmire was injured by exposure to Bechtel-attributable asbestos at either the Pittsburg or Moss Landing plants. Because plaintiffs have thereby forfeited any claim against Bechtel with respect to exposure to asbestos at the Pittsburg or Moss Landing plants (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31 [21 Cal.Rptr.2d 104] [" 'possible theories not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal' " (italics omitted)]; *Hoffman v. Sports Car Club of America* (1986) 180 Cal.App.3d 119, 126 [225 Cal.Rptr. 359] [where plaintiff failed to present evidence supporting claim in opposition to summary judgment motion, claim is not preserved]), we limit our discussion to the argument and proffered evidence with respect to exposure at the Contra Costa plant.

In their complaint, plaintiffs alleged causes of action for negligence, strict liability, false representation, and intentional tort/intentional failure to warn.[1] They alleged generally that Bechtel and other defendants negligently and with conscious disregard for the safety of exposed persons "researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised" asbestos and asbestos-containing products.

Bechtel served "all-facts" interrogatories on plaintiffs requesting the details of Whitmire's alleged exposure to asbestos specifically attributable to Bechtel. In their responses, plaintiffs set forth two theories of such exposure.

First, they asserted that Bechtel was an "outside contractor" that performed modification and overhaul work to PG&E powerplant boilers, work that included the removal or "ripout" of asbestos-containing insulation from the boilers and resulted in Whitmire inhaling "heavy dust." In a declaration later submitted in opposition to Bechtel's summary judgment motion, Whitmire stated that this repair work by Bechtel took place at the Contra Costa plant. However, plaintiffs' responses to special interrogatories stated unequivocally that Bechtel was an outside contractor at the *Moss Landing* facility, not the Contra Costa plant. In the Discussion, *post*, we examine the effect of the contradiction between Whitmire's declaration and the interrogatory responses as well as other evidence that, according to plaintiffs, creates a triable issue with respect to Whitmire's exposure as a result of Bechtel's alleged outside contractor work at Contra Costa.

Second, plaintiffs asserted that Bechtel exposed Whitmire to asbestos as the general contractor responsible for the construction of the Contra Costa Powerhouse: "As the general contractor, Plaintiff believes Bechtel also contracted for, specified, directed and oversaw the installation, removal and use of asbestos-containing products, materials and equipment, including, but not limited to, asbestos-containing thermal insulation and asbestos cement at the [Contra Costa Powerhouse]." Plaintiffs further alleged that Whitmire "was exposed to asbestos fibers released from work he performed on the various asbestos-containing materials, products and equipment, and from work performed by others on the various asbestos-containing products, material and equipment in Plaintiff's immediate vicinity, at the Contra Costa" plant.

Bechtel moved for summary judgment on the issue of causation, contending that "Plaintiffs have not produced—and cannot produce—evidence that

---

[1] Barbara Whitmire also alleged a cause of action for loss of consortium. She became Whitmire's successor in interest after he died from his disease.

Whitmire was ever exposed to asbestos attributable to Bechtel, much less that Bechtel-attributable asbestos was a substantial factor in the causation of his alleged injury." In opposition, plaintiffs argued that Bechtel had failed to meet its initial moving burden of demonstrating the absence of a triable issue of material fact and, in the alternative, submitted evidence (detailed in the Discussion below) that plaintiffs contended was sufficient to create a triable controversy as to whether Whitmire was exposed to asbestos as a result of Bechtel's conduct.

At the hearing on Bechtel's motion, the court's tentative ruling was to grant summary judgment. The court proposed to disregard Whitmire's declaration alleging exposure at the Contra Costa plant because it was "inconsistent to prior discovery responses where he declared he had been exposed at the Moss Landing facility." It appears from the hearing that this was the court's ultimate ruling, although the judgment does not state the reasons.

This timely appeal followed.

## DISCUSSION

### I.  *Summary Judgment Standard*

"We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438 [50 Cal.Rptr.3d 71] (*Weber*).)

A motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met its burden of showing that a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (*Id.*, subd. (p)(2); see *Weber, supra*, 143 Cal.App.4th at p. 1437.)

"In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) In some instances, however, "evidence

may be so lacking in probative value that it fails to raise any triable issue." (*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 795 [245 Cal.Rptr. 44] (*Advanced Micro Devices*).)

## II. *Causation Standard*

██ "A threshold issue in asbestos litigation is exposure to the defendant's product. . . . If there has been no exposure, there is no causation." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1103 [120 Cal.Rptr.2d 23].) Plaintiffs bear the burden of "demonstrating that exposure to [Bechtel's] asbestos products was, in reasonable medical probability, a substantial factor in causing or contributing to [Whitmire's] risk of developing cancer." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 957–958 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) "Factors relevant to assessing whether such a medical probability exists include frequency of exposure, regularity of exposure and proximity of the asbestos product to [Whitmire]." (*Weber, supra*, 143 Cal.App.4th at p. 1438.) Therefore, "[plaintiffs] cannot prevail against [Bechtel] without evidence that [Whitmire] was exposed to asbestos-containing materials manufactured or furnished by [Bechtel] with enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor in causing the plaintiff's injuries." (*Ibid.*; see also *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 102 [41 Cal.Rptr.3d 229] (*Andrews*).) "While there are many possible causes of any injury, ' "[a] possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." ' [Citation.]" (*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1416 [37 Cal.Rptr.2d 902].)

## III. *Plaintiffs Did Not Present Sufficient Evidence to Raise a Triable Issue of Fact Regarding Exposure at Contra Costa*

In determining whether the trial court correctly granted summary judgment, we would usually begin by analyzing whether Bechtel, as the moving party, had sufficiently met its initial burden of demonstrating that one or more elements of each of plaintiffs' claims cannot be established, or that there is a complete defense to each cause of action. (See, e.g., *Weber, supra*, 143 Cal.App.4th at pp. 1439–1443; *Andrews, supra*, 138 Cal.App.4th at pp. 102–107.) However, in this case, on appeal plaintiffs have forfeited any argument that Bechtel failed to meet its initial burden of production with respect to Whitmire's alleged Contra Costa exposure by failing to so argue in their opening brief. (See *Fidelity National Title Ins. Co. v. Schroeder* (2009)

179 Cal.App.4th 834, 847, fn. 11 [101 Cal.Rptr.3d 854]; *Tilton v. Reclamation Dist. No. 800* (2006) 142 Cal.App.4th 848, 864, fn. 12 [48 Cal.Rptr.3d 366].)

Instead, plaintiffs frame the sole issue on appeal as whether the evidence proffered by plaintiffs demonstrates that there were triable issues of material fact regarding Whitmire's exposure to asbestos caused by Bechtel. They contend that they produced substantial evidence supporting their theories that Whitmire was exposed to asbestos-containing insulation (1) disturbed by Bechtel in the course of overhauling boilers at the Contra Costa plant and (2) installed by Bechtel as the general contractor for a number of the buildings constructed at the Contra Costa plant. Accordingly, we examine whether, based on this evidence, reasonable jurors could find that Whitmire was exposed to such asbestos-containing materials "with enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor" in causing Whitmire's illness. (*Weber, supra,* 143 Cal.App.4th at p. 1438.) We hold that they have not created triable issues of fact as to either alleged source of exposure.

### A. *Plaintiffs Have Not Created a Triable Issue of Fact Concerning Asbestos Allegedly Disturbed by Bechtel*

In contending that Whitmire was exposed to asbestos from insulation disturbed by Bechtel at the Contra Costa plant, plaintiffs primarily rely on a declaration from Whitmire submitted in opposition to Bechtel's summary judgment motion. In that declaration, Whitmire claimed that he was exposed to asbestos dust in the early 1960's when Bechtel was performing work on boilers at the Contra Costa plant: "There were 10 boilers at the Contra Costa Powerhouse. I recall insulators using bags of raw asbestos to insulate the boilers and steam lines. The pipes were insulated with blocks formed to fit over the pipes. The blocks were wired to the pipes, then mud was used to fill the cracks, and finally wrapped with cloth. These boilers were overhauled every 1 and 1/2 to 2 years while I was at Contra Costa from 1961 to 1966. These overhauls involved the rip out of insulation from the boilers. I recall that an outside contractor, Bechtel, was involved in the ripout of insulation from the boilers at Contra Costa in the early 1960's when I was present working as a helper/operator. The ripout was very dusty work and I breathed the dust created by this work."

The trial court disregarded Whitmire's declaration on the basis that it contradicted Whitmire's previous deposition testimony and interrogatory responses, and thus did not create a triable issue of fact. As discussed below, we agree with the trial court's ruling.

At his deposition, Whitmire testified that the work he recalled Bechtel doing at PG&E involved thermal insulation work on boilers, valves, pumps,

and motors. He initially testified that he knew the workers were from Bechtel because they "had it on their hats and trucks." But he later acknowledged that he did not actually recall seeing the name "Bechtel" on a truck and that he knew Bechtel employees only "by their hard hat." He saw such workers "probably seven times, maybe," for jobs of differing duration—"it could be a 12-week job. It could be as short as a two-week job." When workers ripped out thermal insulation from boilers, very heavy dust would result and Whitmire, who was present in the vicinity, inhaled it.[2]

In an ambiguous exchange during the deposition, Whitmire testified as follows:

"Q. Assuming there were records available from either Bechtel or PG&E or somebody else which indicated that Bechtel never had any presence at any PG&E site where you worked with the exception of the Moss Landing site after 1985, do you have any reason to disagree with that? [¶] . . . [¶]

"A. After 1985?

"Q. . . . At Moss Landing.

"A. I do not recall any other site that I saw Bechtel working, if that was your question.

"Q. Only at the Moss Landing after '85, is that—

"A. After '85, that's correct."

Bechtel argues that Whitmire thus testified that Bechtel's activities occurred only at the *Moss Landing* plant and only after 1985. According to plaintiffs, however, this deposition testimony established merely that *after 1985* Whitmire did not recall seeing Bechtel working at any other site except Moss Landing. Plaintiffs' interpretation, while plausible if the deposition testimony is viewed in isolation, is unreasonable in light of Whitmire's unambiguous interrogatory responses stating that Bechtel's boiler work described in his deposition testimony occurred at Moss Landing. In response to special interrogatory No. 5, Whitmire alleged in part: "Bechtel was an outside contractor during the time he worked at Moss Landing Powerhouse between approximately 1985 and 1993. . . . In his deposition, Plaintiff Jimmie Whitmire testified that he recalled Bechtel observing outside contractors performing modifications and overhaul work to the boilers at the

---

[2] Whitmire testified that he did not know when this insulation had originally been installed, and did not know the brand name, manufacturer, or supplier of that insulation. To Whitmire's knowledge, this insulation had not been tested for asbestos content.

Moss Landing Powerhouse on approximately seven different occasions. Mr. Whitmire indicated this work was being performed while he worked with the valves, pumps, and motors. Plaintiff added that on these approximate [*sic*] seven different occasions, the work on the boilers would last anywhere from two to twelve weeks. Mr. Whitmire further testified that in some instances, this work involved the removal or ripout of thermal insulation from the equipment. Plaintiff indicated in his deposition that this work, in which he was in the same proximity of, resulted in very heavy dust in the atmosphere, and that he breathed the dust. He added that the only way to avoid breathing dust was to physically leave the site. Plaintiff knew the workers were from Bechtel because that was the name on their hardhats."

Similarly, special interrogatory No. 6 required Whitmire to state whether he specifically recalled Bechtel being present at the locations where he was exposed, when Whitmire worked there. Special interrogatory No. 7 required Whitmire to describe in detail Bechtel's work activities at each location. In response to both interrogatories, Whitmire again referred to his deposition testimony as describing work at Moss Landing. These interrogatory responses stand in direct contradiction to Whitmire's declaration stating that Bechtel performed the boiler work in question at the Contra Costa plant.

 ██  It is well established that "a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 [64 Cal.Rptr.3d 803, 165 P.3d 581]; see *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451 [16 Cal.Rptr.2d 320] ["A party cannot create an issue of fact by a declaration which contradicts his prior pleadings."].) In determining whether any triable issue of material fact exists, the trial court may give "great weight" to admissions made in discovery and "disregard contradictory and self-serving affidavits of the party." (*Preach v. Monter Rainbow, supra*, 12 Cal.App.4th at p. 1451.) Our Supreme Court has explained that such admissions "have a very high credibility value," particularly when they are "obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10].) "Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (*Ibid.*) Where a declaration submitted in opposition to a motion for summary judgment clearly contradicts the declarant's earlier deposition testimony or discovery responses, the trial court may fairly disregard the declaration and " 'conclude there is no *substantial* evidence of the existence of a triable issue of fact.' " (*Id.* at p. 21.)

Plaintiffs suggest that their interrogatory responses were simply a mistaken summary of Whitmire's deposition testimony, a point their counsel raised briefly for the first time at the hearing on the summary judgment motion. They argue that where a reasonable explanation for the contradiction is provided, the trial court must consider all the evidence submitted, including the controverting declaration. However, the trial court's decision to disregard Whitmire's declaration was well justified, given that Whitmire's declaration does not even acknowledge the contrary interrogatory responses and that plaintiffs provided no explanation for the contradiction at the time the declaration was submitted. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 549 [100 Cal.Rptr.3d 494] ["We cannot accept as substantial evidence of a triable issue of fact a declaration that directly contradicts the declarant's prior statement, where the contradiction is unexplained. We may not ignore this significant contradiction"].)

Contrary to plaintiffs' contention, neither *Mason v. Marriage & Family Center* nor *Niederer v. Ferreira* suggests that the trial court should have considered Whitmire's declaration. In *Mason*, the plaintiff stated in interrogatory responses that her injuries had begun on one particular date, but she later submitted a detailed explanation in a declaration accompanying her opposition to the summary judgment motion stating that the date provided in her interrogatory response had been a mistake. Finding her explanation credible, the appellate court found that "the trier of fact could reasonably conclude that the initial interrogatory response was, as Mason explained in her declaration, a simple mistake." (*Mason v. Marriage & Family Center* (1991) 228 Cal.App.3d 537, 546 [279 Cal.Rptr. 51].) Similarly, in *Niederer*, while the plaintiff's declaration contradicted her deposition testimony that a note had not been assigned to her, the court determined that the declaration could properly be considered because the plaintiff had submitted a supplemental declaration stating that she had not understood the question asked of her at the deposition, and providing a reasonable explanation for the source of her confusion. (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1502–1503 [234 Cal.Rptr. 779].) By contrast, a "careful examination in light of the entire record" here yields no explanation for the discrepancy and no basis for concluding that the interrogatory responses were obviously mistaken. (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735].) The trial court was thus perfectly entitled to give plaintiffs' answers to special interrogatories "special consideration" (*Girard v. Ball* (1981) 125 Cal.App.3d 772, 781 [178 Cal.Rptr. 406]), and to conclude that Whitmire's contradictory declaration did not "constitute '*substantial* evidence of the existence of a triable issue of fact.'" (*Advanced Micro Devices, supra*, 199 Cal.App.3d at p. 800; see *Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382

[121 Cal.Rptr. 768] ["[I]n view of plaintiff's admissions in her deposition and answers to interrogatories that she had suffered no physical injury," contrary affidavits were properly "disregarded as irrelevant, inadmissible or evasive. [Citations.]"].)

Plaintiffs also contend that the trial court erroneously failed to consider other evidence they submitted, besides Whitmire's declaration, that they contend raises a triable issue as to whether Bechtel's activities as outside contractor exposed Whitmire to asbestos. They are correct that "[w]hile the *D'Amico* rule permits a trial court to disregard declarations by *a party* which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy), it does not countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute." (*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1524–1525 [27 Cal.Rptr.3d 826].) *Scalf* does not break any new ground in this regard. The decision merely reinforces the principle that neither a party's deposition testimony nor its responses to interrogatories constitute "incontrovertible judicial admissions" of a fact that bar the party from introducing other evidence that controverts the fact. (*Id.* at p. 1522; see also *Price v. Wells Fargo Bank, supra,* 213 Cal.App.3d at p. 482 ["A summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence."].) Thus, the next issue becomes whether, without considering Whitmire's declaration concerning exposure from boiler work at Contra Costa, plaintiffs presented sufficient *other* evidence to raise a triable issue of fact whether Whitmire was exposed to asbestos at Contra Costa that was disturbed by Bechtel in its capacity as outside contractor.

In addition to Whitmire's declaration, plaintiffs rely on the deposition of Donald Nance, a former employee at the Contra Costa plant, who testified that he saw Bechtel employees at Contra Costa during his tenure there. Nance, however, did not recall the dates on which he saw Bechtel at Contra Costa. He testified that he believed Bechtel had been the main contractor for some of the Contra Costa buildings: "I know that Bechtel's name is on a lot of prints in the plant. And I know Bechtel had been in the plant from time to time. To remember a time and a date and a person, I don't." Nance did not know if Whitmire was involved with Bechtel's work, and he did not remember seeing Whitmire in the proximity of a Bechtel employee.

Nance provided no testimony suggesting that Bechtel had served as an outside contractor overhauling boilers at the Contra Costa plant or any testimony otherwise demonstrating that Bechtel had disturbed asbestos there. His testimony that Bechtel may have been the main contractor that constructed some of the Contra Costa buildings does not help establish plaintiffs'

theory that Bechtel had disturbed asbestos in its capacity as an outside contractor overhauling and repairing boilers at the Contra Costa plant.

Finally, plaintiffs assert that their theory concerning Whitmire's exposure to asbestos as a result of Bechtel's work on Contra Costa boilers "is corroborated by Charles William Ay, plaintiffs' [asbestos expert, who states] in his declaration that given the time period of [this particular] exposure (early-to-mid 1960's), it is more likely than not that the boilers at the Contra Costa facility were insulated with asbestos-containing thermal insulation." However, even if Ay's declaration were sufficient to create a triable issue of fact as to whether the boilers at Contra Costa were covered in asbestos-containing insulation, Bechtel correctly points out that his testimony does not purport to establish that *Bechtel* was responsible for installing or disturbing the insulation on these boilers. Without admissible evidence tying Bechtel to the boiler work at Contra Costa, Ay's declaration that the boilers were covered in asbestos is meaningless. (See *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 [8 Cal.Rptr.3d 363] ["an expert's opinion that something *could* be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist in the case before the jury, does not provide assistance to the jury because the jury is charged with determining what occurred in the case before it, not hypothetical possibilities"].)

■ Plaintiffs have not presented admissible evidence that creates a triable issue of fact as to whether Bechtel exposed Whitmire to asbestos by disturbing the insulation on the Contra Costa boilers. Summary judgment was properly granted as to this theory.

### B. *Plaintiffs Have Not Created a Triable Issue As to Whether Whitmire Was Exposed to Asbestos Specified by Bechtel As General Contractor at the Contra Costa Plant*

Plaintiffs contend that triable issues also exist as to their second theory of exposure: that Bechtel was responsible for Whitmire's injuries because, as general contractor for some of the Contra Costa buildings, it allegedly had specified the use of asbestos-containing insulation and directed its installation. At the outset, we address Bechtel's contention that plaintiffs waived this theory of liability. We hold that the record does not support such a waiver.

Plaintiffs' complaint alleged, in part, that Whitmire was exposed to asbestos installed and "contracted for installation" by Bechtel. And in their response to special interrogatory No. 5, plaintiffs alleged in part that "Bechtel was also the general contractor responsible for the construction of the . . . [Contra Costa Powerhouse]. . . . As the general contractor, Plaintiff believes

Bechtel also contracted for, specified, directed and oversaw the installation, removal and use of asbestos-containing products, materials and equipment, including, but not limited to, asbestos-containing thermal insulation and asbestos cement at the [Contra Costa Powerhouse]." Plaintiffs also alleged generally that Whitmire "was exposed to asbestos fibers released from work he performed on the various asbestos-containing materials, products and equipment, and from work performed by others on the various asbestos-containing products, material and equipment in Plaintiff's immediate vicinity, at the Contra Costa" plant.

Bechtel contends that plaintiffs waived this theory, which they characterize as plaintiffs' "negligent design argument," in responding to Bechtel's document requests. Bechtel had requested that plaintiffs produce "[d]ocuments which support your contention that Bechtel negligently prepared any plans or specifications for any of the buildings, units, structures, process lines, equipment or vessels at any of the locations which you contend that Bechtel was responsible for Plaintiff's exposure to asbestos." Plaintiffs responded that "Plaintiffs have made no such allegation [that Bechtel negligently prepared any plans or specifications for any of the buildings, units, structures, process lines, equipment or vessels], making it impossible for Plaintiff to respond to this request without speculating as to its meaning."

Even if this response were deemed a waiver by plaintiffs of their claim of *negligence* based on Bechtel's work as the general contractor at Contra Costa, plaintiffs' complaint plainly also includes a cause of action for *strict liability* based on Bechtel's role as the general contractor that specified and directed the installation of asbestos-containing insulation.[3] Accordingly, we are not convinced that plaintiffs waived all their causes of action with respect to exposure caused by Bechtel in its alleged role as the Contra Costa general contractor. We now consider whether plaintiffs presented sufficient evidence to create a triable issue that Bechtel exposed Whitmire to asbestos based on its alleged role as the general contractor of a number of Contra Costa buildings.

1. *Contra Costa Buildings 6 and 7*

The Contra Costa plant was built in several stages, with various buildings constructed in the 1950's, and others, including buildings 6 and 7, in the early 1960's. Plaintiffs assert that Bechtel was the general contractor for buildings 6 and 7 at Contra Costa and that specifications it issued called for "the furnishing and installation of all thermal insulation," including asbestos-containing insulation, at the same time that Whitmire worked in those

---

[3] The question whether a general contractor may properly be held liable under strict liability principles for specifying and directing the installation of asbestos-containing materials is not before us.

buildings. We conclude that plaintiffs' proffered evidence is not sufficient to create a triable issue of fact with respect to whether Whitmire was exposed to asbestos specified or installed by Bechtel in buildings 6 and 7.

First, there is insufficient evidence that *Bechtel* was responsible for any specification, installation or removal of asbestos-containing insulation in buildings 6 and 7. Plaintiffs rely on "Specifications for Furnishing and Installation of the Thermal Insulation for Contra Costa Power Plant Units No. 6 and 7" dated from 1963 that call for the application of thermal insulation to "[e]quipment specified herein, including pumps, tanks, drums and heaters" and on the "piping systems," including the valves on the piping systems. However, Bechtel correctly notes that the specifications themselves contain no reference to Bechtel and there is insufficient evidence in the record otherwise indicating that Bechtel issued these specifications or performed work according to these specifications. Contrary to plaintiffs' contention, Bechtel's person most knowledgeable did *not* admit that Bechtel had issued these specifications for buildings 6 and 7, testifying instead that he had found no evidence that Bechtel was involved in this project. It is undisputed that the construction of buildings 6 and 7 took place in the early 1960's, and yet Bechtel's witness testified only that Bechtel was involved with specifications for construction at the Contra Costa plant that took place *in the early 1950's.*

Plaintiffs contend that Nance's deposition testimony supports the conclusion that Bechtel was the contractor who constructed buildings 6 and 7 and specified the installation of asbestos. Asked at his deposition what work he recalled Bechtel doing at the Contra Costa plant, Nance testified as follows: "Well, I think they were the main contractor in building one, two and three, and I don't know about four and five units. I thought they were on six and seven—seven units when they . . . were built [in] '63, '64. But I'm not positive that they were the main contractor. But I know that about half the prints in the plant say Bechtel on them. And so . . . they were involved in it somewhere along the line." Nance's testimony thus makes clear that his admittedly uncertain belief that Bechtel was the main contractor for buildings 6 and 7 was premised on his memory that "about half the prints in the plant say Bechtel on them." It is not disputed that Bechtel was involved with the construction of a number of buildings at the Contra Costa plant *other* than buildings 6 and 7. (See pt. III.B.2., *post.*) Thus, Nance's recollection that "about half the prints in the plant say Bechtel on them" does not make it reasonable to conclude that buildings 6 and 7 were necessarily among the buildings constructed by Bechtel. Nance's vague and equivocal testimony is therefore an insufficient basis, on its own, to conclude that Bechtel either issued the specifications associated with buildings 6 or 7 or was involved in the installation of insulation at those buildings.

Even if plaintiffs could prove that Bechtel was the contractor for buildings 6 and 7, they have failed to present sufficient evidence from which to conclude that the insulation installed there, and to which Whitmire was exposed, contained asbestos. The specifications for buildings 6 and 7 called for the use of various types of thermal insulation, including both high temperature and medium temperature insulation. Plaintiffs submitted no evidence that the high temperature insulation contained asbestos. The medium temperature insulation specified was "[e]ighty-five percent magnesia," which appears to generally include asbestos, although we note that nothing in the record demonstrates that 85 percent magnesia manufactured in the 1960's necessarily contained asbestos. However, even if we assume that the medium temperature insulation did contain asbestos, there is no evidence demonstrating that this type of insulation, as opposed to the high temperature insulation, was actually installed on the pumps, valves, and boilers located in the vicinity in which Whitmire worked, much less evidence that Whitmire was exposed to such asbestos with "enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor in causing [Whitmire's] injuries." (*Weber, supra*, 143 Cal.App.4th at p. 1438.)[4]

■ "The mere 'possibility' of exposure does not create a triable issue of fact. [Citation.]" (*Andrews, supra*, 138 Cal.App.4th at p. 108.) Liberally construing plaintiffs' evidence, the most that can be concluded is that asbestos would likely have been found in some of the insulation in buildings 6 and 7, and that Whitmire worked in those buildings. Such evidence is simply not "of sufficient weight to support a reasonable inference of causation." (*Dumin v. Owens-Corning Fiberglas Corp.* (1994) 28 Cal.App.4th 650, 656 [33 Cal.Rptr.2d 702]; see also *McGonnell v. Kaiser Gypsum Co., supra*, 98 Cal.App.4th at p. 1105 ["It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment."].)

---

[4] We reject plaintiffs' argument that Bechtel's summary judgment motion did not fairly encompass the issue whether Whitmire had been sufficiently exposed to asbestos due to Bechtel's conduct to conclude that Bechtel asbestos was a "substantial factor" in causing Whitmire's mesothelioma. (*Rutherford v. Owens-Illinois, Inc., supra*, 16 Cal.4th at p. 982.) While they contend that Bechtel's motion was limited to the argument that Whitmire had not been exposed to *any* asbestos attributable to Bechtel, in fact Bechtel explicitly argued in its summary judgment motion that plaintiffs also had no evidence that any "Bechtel-attributable asbestos was a substantial factor in the causation" of Whitmire's disease. As such, plaintiffs should have been on notice that they needed to introduce evidence demonstrating that Whitmire had been exposed to Bechtel-attributable asbestos with sufficient frequency and regularity that it could be considered a substantial factor causing Whitmire's illness. (*Weber, supra*, 143 Cal.App.4th at p. 1438.)

### 2. *Buildings 1–5*

Plaintiffs further contend that "Bechtel also contracted for and specified that asbestos insulation be applied to equipment at the Contra Costa facility in the 1950s, raising triable issues that this asbestos insulation was present when Mr. Whitmire was present." Plaintiffs indeed presented evidence in the form of deposition testimony from Bechtel's PMK (person most knowledgeable) witness as well as building construction specifications from which reasonable jurors could conclude that Bechtel issued the specifications for some of these Contra Costa buildings constructed in the early 1950's and that asbestos-containing insulation and cement were installed pursuant to those specifications.

However, plaintiffs have not presented sufficient evidence demonstrating that Whitmire was exposed to any of the asbestos installed in Contra Costa buildings 1 to 5. Buildings 1 to 5 were constructed in the early 1950's, but Whitmire did not arrive at the Contra Costa plant until 1961. Plaintiffs submitted no evidence from which it could be fairly concluded that the asbestos-containing materials installed in the early 1950's were more likely than not still present when Whitmire was employed there. Whitmire himself testified in his declaration that insulation on the boilers at the plant was typically replaced at least every two years. "[E]ven under the most lenient causation standards, there must be proof that the defendant's asbestos products or activities were present at plaintiff's work site." (*Smith v. ACandS, Inc.* (1994) 31 Cal.App.4th 77, 89 [37 Cal.Rptr.2d 457], disapproved in part on other grounds in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245 [108 Cal.Rptr.2d 617, 25 P.3d 1096].) Here, it would be speculative to conclude that original asbestos specified by Bechtel was present in buildings 1 to 5 at the time that Whitmire worked at the Contra Costa plant. And while plaintiffs contend that Bechtel nevertheless would be liable for the exposure caused by subsequent contractors performing repairs to meet Bechtel's original specifications, there is no evidence suggesting that asbestos-containing material was installed at later times pursuant to those original specifications.

Moreover, plaintiffs have presented insufficient evidence that Whitmire was actually exposed to Bechtel-attributable asbestos in buildings 1 to 5 with sufficient frequency to create a reasonable probability that this exposure contributed to his disease. Nothing in the record establishes that Whitmire worked in buildings 1 to 5 at all. In sum, crediting plaintiffs' theory that Whitmire was exposed to asbestos specified by Bechtel in buildings 1 to 5 "would require a stream of conjecture and surmise," and thus summary judgment was appropriately granted. (*Dumin v. Owens-Corning Fiberglas Corp., supra*, 28 Cal.App.4th at p. 656.)

## DISPOSITION

The judgment is affirmed. Bechtel shall recover its costs on appeal.

Epstein, P. J., and Manella, J., concurred.