David SCLAFANI, et al., Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORPORATION, et al., Defendants.

Case No. CV 12–3013 SVW.

United States District Court, C.D. California.

Signed April 17, 2014.

---

Benno B. Ashrafi, Josiah W. Parker, Ari Scott Friedman, Carlos J.E. Guzman, Weitz and Luxenberg PC, Los Angeles, CA, for Plaintiffs.

Glen R. Powell, Richard R. Ames, Gordon and Rees LLP, Lance Wilson, Tucker Ellis West LLP, Charles S. Park, Edward R. Hugo, Karleen Frances Murphy, Shaghig D. Agopian, Thomas Jeffrey Moses, Brydon Hugo and Parker, Reshma A. Bajaj, Bassi Edlin Huie and Blum LLP, San Francisco, CA, John F. Hughes, Gordon and Rees LLP, Oakland, CA, Rod J. Cappy, Selman Breitman LLP, Suzanna Lianna Minasian, Maryam Danishwar Foley and Mansfield PLLP, Nathan T. Newman, Tucker Ellis LLP, Bradley W. Gunning, Daniel Scott Hurwitz, Geoffrey M. Davis, Michele C. Barnes, Stephen P. Farkas, K & L Gates LLP, Farah Sohaili Nicol, William J. Sayers, McKenna Long and Aldridge LLP, Charles William Jenkins, Wilson Elser Moskowitz Edelman and Dicker LLP, Elan N. Stone, Lewis Brisbois Bisgaard and Smith LLP, Los Angeles, CA, Nina I. Webb–Lawton, Vorys Sater Seymour and Pease LLP, Columbus, OH, Arpi Galfayan, Carla Lynn Crochet, Jeremy David Milbrodt, Prindle Amaro Goetz Hillyard Barnes and Reinholtz LLP, Long Beach, CA, for Defendants.

ORDER ON JOINT DEFENSE MOTION FOR SUMMARY JUDGMENT REGARDING CAUSATION [339, 340, 342, 345]

STEPHEN V. WILSON, District Judge.

This is a wrongful death product liability action brought by the survivors of David Sclafani. It is undisputed that Sclafani died from mesothelioma, a cancer associated with exposure to asbestos. Defendants' motion addresses one prong of the liability analysis: causation. For purposes of resolving the motion, the Court assumes that defendants manufactured or supplied products containing asbestos, and that Sclafani came into contact with those products during his four years of service in the Navy. The sole issue for decision is whether there is a genuine factual dispute over causation, specifically, whether Sclafani's exposure to defendants' products "was, in reasonable medical probability, a substantial factor in causing or contributing to his risk of developing cancer." *Rutherford v. Owens–Illinois, Inc.,* 16 Cal.4th 953, 957–58, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (1997).

## I. BACKGROUND

Decedent David Sclafani enlisted in the Navy in January of 1960, serving as a boiler technician aboard the U.S.S. Morton from 1960 until 1963 and the U.S.S. Rogers for approximately six months in 1963. Among other things, Sclafani performed maintenance and repair work on various pumps, valves, and boilers aboard each ship. Sclafani claims that while working with these pumps, valves, and boilers, he inhaled asbestos-laden dust which later caused him to develop mesothelioma, the disease that caused his death.

Plaintiffs originally brought suit against twenty-nine defendants, alleging various causes of action under California law. Twenty-five of the defendants eventually settled or were otherwise dismissed from the action. On May 23, 2013, the four remaining defendants—Air and Liquids Systems Corporation (successor to Buffalo Pumps, Inc.), Goodyear Tire and Rubber Company, Foster Wheeler LLC, and Crane Co.—filed a joint motion for summary judgment on the issue of causation. (Dkt. 300). After Sclafani passed away,

proceedings on the summary judgment motion were temporarily stayed. On August 15, 2013, Sclafani's survivors filed an amended complaint. Three of the defendants subsequently re-noticed their original summary judgment motion. The parties have relied on the briefing previously submitted in connection with the original motion.[1] (*See* Dkt. 340 at 1.)

## II. LEGAL STANDARD

■ Federal Rule of Civil Procedure 56 requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, the nonmoving party must go beyond the pleadings and identify spe-

cific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes over facts that might affect the outcome of the suit under the governing law—*i.e.*, "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party"—will preclude entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Standard of Proof for Causation

■ The California Supreme Court's decision in *Rutherford v. Owens–Illinois, Inc.* set forth the "controlling two-part test for determining whether exposure to asbestos from a particular product was a legal cause of a plaintiff's injury in an asbestos-induced personal injury case." *Miranda v. Bomel Const. Co., Inc.*, 187 Cal.App.4th 1326, 1338, 115 Cal.Rptr.3d 538 (2010). First, the plaintiff must "establish some threshold *exposure* to the defendant's defective asbestos-containing products." *Rutherford*, 16 Cal.4th at 982, 67 Cal.Rptr.2d 16, 941 P.2d 1203. Second, the plaintiff must establish to a "reasonable medical probability that a particular exposure or series of exposures was a 'legal cause' of his injury, i.e., a *substantial factor* in bringing about the injury." *Id.*

■ *Rutherford* confirmed that in an asbestos personal injury action based on a products liability theory, as here, "the burden falls on the plaintiff to establish causa-

---

1. The parties represent that plaintiffs have reached a settlement with Air & Liquid Systems Corporation and that accordingly, portions of the briefs and supporting statements of uncontroverted facts relating to Sclafani's alleged exposure to Buffalo brand pumps should be disregarded. (Dkt. 336; Dkt. 340 at 1 n. 2.)

tion." *Id.* at 968, 67 Cal.Rptr.2d 16, 941 P.2d 1203. The plaintiff "must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury." *Id.* The state high court rejected the plaintiff's invitation to shift the burden to manufacturers and distributors of asbestos-containing products to prove that their products did not in fact cause the plaintiff's injuries. *See id.* at 969–83, 67 Cal.Rptr.2d 16, 941 P.2d 1203. Nevertheless, the court acknowledged that "there is scientific uncertainty regarding the biological mechanisms by which inhalation of certain microscopic fibers of asbestos leads to lung cancer and mesothelioma," and that the question of "which particular fiber or fibers actually caused the cancer to begin forming" is "apparently unanswerable." *Id.* at 974–75, 67 Cal.Rptr.2d 16, 941 P.2d 1203. In view of these problems of proof, the California Supreme Court concluded that the following standard should govern in asbestos product liability cases:

> [P]laintiffs may prove causation in asbestos-related cancer cases by demonstrating that the plaintiff's exposure to defendant's asbestos-containing product in reasonable medical probability was a substantial factor in contributing to the aggregate *dose* of asbestos the plaintiff or decedent inhaled or ingested, and hence to the *risk* of developing asbestos-related cancer, without the need to demonstrate that fibers from the defendant's particular product were the ones, or among the ones, that actually produced the malignant growth.

*Id.* at 976–77, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (footnote omitted). To guard against jurors erroneously holding plaintiffs to a higher standard of "prov[ing] that fibers from the defendant's product were a substantial factor *actually contributing* to the development of the plaintiff's or decedent's cancer," the court held that jurors should be instructed that a particular asbestos-containing product is a "substantial factor" in causing the plaintiff's injury "if in reasonable medical probability it contributed to the plaintiff or decedent's *risk* of developing cancer." *Id.* at 977, 67 Cal.Rptr.2d 16, 941 P.2d 1203.

## B. The Role of Expert Medical Testimony in Establishing Causation

Under California law, "[a]lthough juries are normally permitted to decide issues of causation without guidance from experts, the unknown and mysterious etiology of cancer is beyond the experience of laymen and can only be explained through expert testimony." *Jones v. Ortho Pharm. Corp.,* 163 Cal.App.3d 396, 403, 209 Cal. Rptr. 456 (1985); *accord Miranda,* 187 Cal.App.4th at 1336, 115 Cal.Rptr.3d 538 (" 'The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.' ") (quoting *Jones,* 163 Cal.App.3d at 402, 209 Cal.Rptr. 456). The Court of Appeal explained:

> In the absence of factual circumstances of probability understandable to a jury there must be some scientific testimony that can be interpreted as an inference of hypothetical probability before we can allow a jury to speculate upon the rights of citizens. If the experts cannot predict probability in these situations, it is difficult to see how courts can expect a jury of laymen to be able to do so. This requirement does in some instances place extraordinary burdens of proof on claimants. But once the theory of causation leaves the realm of lay knowledge for esoteric scientific theories, the scientific theory must be more than a possibility to the scientists who created it. For to the scientific mind, all things are possible. And with all things possible,

citizens would have no reasoned protection from the speculations of courts and juries.

*Jones,* 163 Cal.App.3d at 403–04, 209 Cal. Rptr. 456 (citation and internal quotation marks omitted).

■ Consistent with this general rule, the California Supreme Court held in *Rutherford* that an asbestos personal injury plaintiff need not prove with certainty that the defendant's product was a "substantial factor contributing to the plaintiff's disease," but instead is held to a standard of proof by "reasonable medical probability." *Id.* at 976, 67 Cal.Rptr.2d 16, 941 P.2d 1203. This standard recognizes that " 'asbestos injury cases ... involve the use of *medical evidence.* ' " *Id.* at 976 n. 11, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (quoting *Lineaweaver v. Plant Insulation Co.,* 31 Cal.App.4th 1409, 1416 n. 2, 37 Cal. Rptr.2d 902 (1995)) (emphasis added). In determining whether exposure to a defendant's products was a "substantial factor" in causing the plaintiff's cancer, therefore, the plaintiff must prove " 'there is a reasonable medical probability *based upon competent expert testimony* ' " that the defendant's products contributed to the risk of developing cancer. *Id.* at 976 n. 11, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (quoting *Lineaweaver,* 31 Cal.App.4th at 1416, 37 Cal. Rptr.2d 902) (emphasis added). The court explained that the "reasonable medical probability" standard is "particularly well suited to proof of causation through expert medical evidence." *Id.*

### C. Plaintiffs' Evidence

Defendants contend that there is no admissible evidence that Sclafani's exposure to their products was a "substantial factor" in causing his mesothelioma. As just discussed, expert medical testimony is a crucial element of the evidence needed to establish causation. To defeat summary judgment, therefore, plaintiffs must identify expert testimony that, in combination with plaintiffs' other evidence about Sclafani's exposure to defendants' products, would be sufficient to permit a reasonable jury to find that Sclafani's *exposure to those products* was in reasonable medical probability a substantial factor in contributing to his mesothelioma. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

■ The primary evidence offered in this regard by plaintiffs was the testimony of their expert, Dr. Arnold Brody. Dr. Brody opined, in his Rule 26 disclosure, that "[e]ach and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease." (Dkt. 300–11–12: Brody Report at 21–22.) However, Dr. Brody did not offer an opinion on whether Sclafani's exposure to a particular defendant's asbestos-containing product was a "substantial factor" in contributing to his disease. His opinion was only that "every exposure" contributes to the development of the disease. As the Court previously held, Dr. Brody's opinion is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). (Dkt. 253: Order re Defs' Mots. in Limine, at 6–7.) By Dr. Brody's own admission, his "every exposure" theory could not be tested and had not been published in any peer-reviewed literature. His opinion therefore failed to satisfy at least two of the four *Daubert* criteria.[2]

---

**2.** In his expert report, Dr. Brody cited four publications in support of his conclusion that "no amount of exposure to asbestos above the background levels present in ambient air has been established as too low to induce mesothelioma." (Dkt. 300–12: Brody Report at 22 & nn. 79–82.) However, Dr. Brody did not attach these publications to his report, and

Plaintiffs make three arguments in opposition to summary judgment. First, they argue that the testimony of their epidemiologist, Dr. Barry Horn, can establish that Sclafani's exposure to each defendant's product was a "substantial factor" in contributing to his risk of developing mesothelioma. However, Dr. Horn's expert report stated only that, in his opinion, the work that Sclafani did with "gaskets and packing and the work done by other military personnel with gaskets and packing contributed to his risk for the development of mesothelioma." (Dkt. 300–20: Horn Report at 41.) Even if Sclafani's work with gaskets and packing in the Navy caused his mesothelioma, nothing in Dr. Horn's report shows a reasonable medical probability that Sclafani's exposure to the particular products supplied by Goodyear, Foster Wheeler, or Crane was a substantial factor in contributing to his risk of developing mesothelioma, which is the key causal connection that *Rutherford* requires.

At his deposition, Dr. Horn testified: "Any exposure to free asbestos fibers such that you inhale and retain asbestos fibers in your lungs increase[s] your risk for the development of mesothelioma." (Dkt. 312–2: Horn Depo at 27.) Because this opinion was not included in Dr. Horn's Rule 26 report, however, it is inadmissible at trial. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) ("Rule 37(c)(1) forbids the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.") (citation and internal quotation marks omitted). In addition, Dr. Horn's opinion in this regard suffers from the same flaws as Dr. Brody's opinion. Dr. Horn did not explain how he reached this conclusion, and plaintiff has not shown it meets *Daubert's* requirements for reliability. Dr. Horn also admitted he did not perform "any calculations with respect to any particular product that Mr. Sclafani worked with while in the Navy," and thus "would not be the right person to come up with any kind of quantitation." (Horn Depo at 28.)

Plaintiff's second argument is based on a recent decision by a California Court of Appeal, *Hernandez v. Amcord, Inc.*, 215 Cal.App.4th 659, 156 Cal.Rptr.3d 90 (2013). At a jury trial alleging the decedent's mesothelioma was caused by exposure to the defendant's plastic cement, which contained asbestos, the trial court granted a non-suit at the close of the plaintiff's case. *See* Cal.Civ.Proc.Code § 581c. As in the instant action, to support their "substantial factor" allegations, the *Hernandez* plaintiffs relied on an epidemiologist who testified that if a person is exposed to many different asbestos-containing products, each of those products contributes to an increased risk of asbestos-related disease. *See Hernandez*, 215 Cal.App.4th at 674, 156 Cal.Rptr.3d 90. The trial court disregarded the epidemiologist's opinion based on "its belief that the relevant authorities required that 'a doctor of some kind, somebody with an M.D. after his name, has got

thus failed to provide the "facts or data" upon which he based his conclusion as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii). *See also Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir.2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment."); *Guidroz–*

*Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 831–32 (9th Cir.2001) ("In the context of a motion for summary judgment, an expert must back up his opinion with specific facts" that "could support the opinion[ ].") (citation and internal quotation marks omitted). In any event, plaintiffs have not relied on these publications in opposing summary judgment, only on Dr. Brody's opinion itself.

to say with a reasonable degree of medical probability that [respondent's] product was a substantial factor in causing his injuries.'" *Id.* at 675, 156 Cal.Rptr.3d 90. The Court of Appeal reversed, explaining that *Rutherford* did not "mandate[ ] that a medical doctor must expressly link together the evidence of substantial factor causation." *Id.* The court also noted that the evidence before the trial court was nearly identical to that presented in *Rutherford.* *Id.*

*Rutherford* and *Hernandez* were in a significantly different evidentiary posture from this case for two reasons. First, in *Rutherford,* the trial court had admitted an epidemiologist's "every exposure" opinion, and in *Hernandez,* the trial court disregarded a similar opinion for improper reasons. In contrast, Dr. Brody's opinion has been excluded because it is inadmissible under Rule 702 and *Daubert.* The fact that similar opinions offered by different experts were admitted at other trials does not imply that Dr. Brody's opinion should be admitted here. This Court's judgment on the admissibility of an expert's opinion is governed by Rule 702 and by *Daubert;* the state courts' rulings on the admissibility of other experts' opinions under a different legal standard does not compel this Court to admit Dr. Brody's testimony. *See People v. Leahy,* 8 Cal.4th 587, 604, 34 Cal.Rptr.2d 663, 882 P.2d 321 (1994) (California courts apply the *Kelly/Frye* test, not the *Daubert* test).

Second, in both *Rutherford* and *Hernandez,* abundant additional evidence beyond the epidemiologist's testimony showed that the decedent was substantially exposed to the particular defendant's product. In

*Rutherford,* the decedent was regularly exposed over a ten year period to asbestos dust that "looked like a 'Texas dust storm,'" which was visibly produced by defendant's Kaylo insulation product. *Rutherford,* 16 Cal.4th at 960–61, 67 Cal. Rptr.2d 16, 941 P.2d 1203. In *Hernandez,* the only evidence that the decedent was exposed to *any* asbestos-containing products was that he worked for twenty years of work as a carpenter and contractor handling the defendant's plastic cement; there was no suggestion that other products might also have contributed to his developing mesothelioma. *See Hernandez,* 215 Cal.App.4th at 664–65, 674–75, 156 Cal. Rptr.3d 90.[3] The plaintiffs' evidence in these cases, together with their epidemiologists' opinions, provided the necessary link between the defendants' products and the decedents' disease. In contrast, in this case, plaintiffs have identified no evidence that would allow a jury to find that Sclafani's exposure to any particular defendant's asbestos-containing product was a substantial factor in contributing to his risk of developing mesothelioma.

California courts have explained that, in determining whether or not exposure to asbestos from a particular defendant's products was "in reasonable medical probability, a substantial factor in causing or contributing to [the plaintiff's] risk of developing cancer," relevant factors include "frequency of exposure, regularity of exposure and proximity of the asbestos product to [the plaintiff]." *Whitmire v. Ingersoll–Rand Co.,* 184 Cal.App.4th 1078, 1084, 109 Cal.Rptr.3d 371 (2010) (citation and internal quotation marks omitted); *Hernandez,* 215 Cal.App.4th at 674 n. 5, 156 Cal. Rptr.3d 90; *Andrews v. Foster Wheeler*

---

**3.** The Court of Appeal also assumed that "the decedent was exposed to [the defendant's] product with sufficient frequency, regularity, and proximity to constitute a substantial factor in bringing about [the decedent's] injury,"

because the defendant had failed to argue, in bringing its motion for nonsuit, that there was insufficient evidence supporting these factors. *See Hernandez,* 215 Cal.App.4th at 674 n. 5, 156 Cal.Rptr.3d 90.

*LLC,* 138 Cal.App.4th 96, 102, 41 Cal. Rptr.3d 229 (2006); *see also Rutherford,* 16 Cal.4th at 975, 67 Cal.Rptr.2d 16, 941 P.2d 1203 ("length, frequency, proximity and intensity of exposure" are relevant to "substantial factor" determination).

In this case, plaintiffs have failed to offer anything more than speculative evidence on the frequency, regularity, and proximity of Sclafani's exposure to any one of defendants' products. As to Crane and Goodyear—whose potential liability stems from the Cranite gaskets with which Sclafani allegedly worked—Sclafani was unable to estimate how often he worked with these particular gaskets. (Dkt. 300–10: Sclafani Depo. at 528–529.) Although he described the process of removing a gasket and estimated it took about two hours (about an hour to remove bolts that fastened the gasket to a valve, and about an hour to scrape the gasket off the valve), he offered no estimate of the amount of time during this process that dust was created. (*Id.* at 541–42.) Sclafani's most specific testimony relates to Foster Wheeler: he testified it took about a half hour to scrape off gaskets in the boiler. (Dkt. 312–5: Sclafani Depo. 670–71.) However, he did not say how long during this process dust was created. (*See id.* at 36–45.) Thus, the jury would have to guess how long Sclafani worked with any given product, and would then have to speculate about whether any given exposure was a substantial factor in contributing to his risk of mesothelioma. Such speculative evidence is insufficient to withstand summary judgment. *See Rutherford,* 16 Cal.4th at 977–78, 67 Cal. Rptr.2d 16, 941 P.2d 1203 ("On the issue of which exposures to asbestos were substantial factors increasing the risk of cancer ... [a plaintiff must show] that the contribution of the individual cause [was] more than negligible or theoretical."); *cf. Lineaweaver,* 31 Cal.App.4th at 1420, 37 Cal. Rptr.2d 902 (despite potential flaws in ex-

pert's quantitative estimates of exposure to asbestos fibers, plaintiff's "evidence of exposure to [defendant's asbestos product] *on a regular basis over more than 30 years* of working with and near asbestos insulation products ... was sufficient to support a jury's inference that exposure to [defendant's] products was a substantial factor in causing [plaintiff's] asbestosis.") (emphasis added).

## IV. ORDER

For the foregoing reasons, defendants' joint motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.