Filed 12/29/21  Downes v. Belmont Park Entertainment CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT DOWNES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BELMONT PARK ENTERTAINMENT, LLC,<br><br>    Defendant and Respondent. | D077851<br><br><br><br><br>(Super. Ct. No. 37-2017-00041162-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed.

Niddrie Addams Fuller Singh and John S. Addams for Plaintiff and Appellant.

Bremer Whyte Brown & O'Meara, Vik Nagpal, and John Paul Salem for Defendant and Respondent.

Defendant Belmont Park Entertainment, LLC (BPE), owns, operates, and maintains the Belmont Amusement park in Mission Beach, which includes the Beach House Grill restaurant and bar (BHG).  Plaintiff Robert Downes sued BPE for negligence and premises liability after he fell backwards off a barstool onto a sand-covered patio at the BHG bar.  Downes

alleged the bar flooring—a 3-foot-wide hard surface walkway between the bar and an 8-inch-deep sand patio—created a dangerous, hidden condition, giving rise to BPE's duty to remedy and/or warn of the unsafe condition.

BPE moved for summary judgment pursuant to Code of Civil Procedure section 437c[1] on various grounds including the "open and obvious doctrine." Pursuant to this doctrine, a possessor of property has no duty to remedy or, as relevant to this case, warn of a dangerous condition that is open and obvious because the condition itself serves as notice of the danger. (See, e.g., *Zuniga v. Cherry Avenue Auction, Inc.* (2021) 61 Cal.App.5th 980 (*Zuniga*).) Although it is a question of fact whether an unsafe condition is "open and obvious," the court here found the doctrine applied as a matter law and granted summary judgment for BPE.[2] Alternatively, the court found Downes's failure to timely respond to BPE's separate statement provided an independent, discretionary ground to grant the motion. The court subsequently awarded BPE costs of $17,359.34.

As we explain, we conclude Downes proffered sufficient evidence to establish a triable issue of material fact whether the condition of the flooring presented a danger that was open and obvious or one that required a warning due to the hidden danger. We also conclude the court erred in granting

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2] BPE also moved for summary adjudication on three issues: (1) Downes caused his own fall by pushing himself off the barstool; (2) his premises liability cause of action failed under the "open and obvious doctrine"; and (3) his negligence cause of action was barred by the "trivial defect doctrine." On appeal, BPE does not argue it is entitled to summary adjudication on any of these issues. We nonetheless address them, albeit in connection with the grant of summary judgment.

2

summary judgment based on Downes's failure to timely respond to BPE's separate statement. Based on our decision, we further conclude the award of costs to BPE must be reversed.[3]

## I. FACTUAL AND PROCEDURAL OVERVIEW

### A. *BHG*

BHG is a 30,000 square-foot outdoor venue featuring tiki bars, fire pits, cabanas, and tropical palms, with capacity to accommodate over 800 seated guests. BHG is located along the busy Mission Beach boardwalk, just behind Belmont Park. This area is a popular tourist attraction particularly during the summer months, when BHG is open seven days a week from about noon to sundown.

In 2007, BHG was remodeled to include a " 'boardwalk-like' walking surface surrounded by sand areas to create the unique atmosphere of an oceanfront restaurant and bar." The boardwalk-like hard walking surface (the walkway) around the bar is formed with "3/4 [inch] 'Trex' plastic wood planks screwed to supports set in the sand." The walkway "extends 36 [inches] out from the counter support wall"; the wall also supports a 9 1/2-inch bar counter overhang. The clear space between the edge of the bar counter to the end of the walkway is therefore 26 1/2 inches (i.e., 36 minus 9 1/2). Although the "pale cream" sand is nearly "flush" with the top level of the dark, maroon colored walkway, the sand is actually 8-inches deeper than the hard surface it abuts.

---

[3] Given our reversal of summary judgment, we deem it unnecessary to address whether the court erred in denying Downes's new trial motion (see § 657) following the grant of summary judgment for BPE.

The footprint of the wooden barstools placed on the walkway is 18 1/2 inches by 16 1/8 inches. The seats of the barstools are 17 1/2 inches by 9 1/8 inches, and the barstools are 29 7/8 inches tall.

B. *The Accident*

On June 1, 2016, Downes and family members ate lunch at a restaurant in Belmont Park. At about 1:00 p.m., Downes, his brother Patrick Downes and their wives entered BHG through the back entrance, walked through sand, and sat at the tiki bar. In opposing summary judgment, Downes described himself as a large patron, and submitted medical records showing he had been diagnosed with "obesity."

Downes sat on a barstool near the corner of the bar. When he first sat down, he pulled the barstool out about a foot and a half from the bar counter, but otherwise did not move while seated at the bar.[4] Over about a four-hour period, he consumed at least three margaritas.

After being at the bar with his brother for about four hours, Downes "shifted" his barstool by "using his hands to push himself off the bar while [his] feet were on the barstool." Patrick saw one of the legs of his brother's barstool slip off the walkway into the sand, causing his brother to fall backwards and hit his head on the ground, rendering him temporarily unconscious. The walkway where Downes sat on the barstool was dry and it was light outside at the time of the accident. Paramedics and other emergency personnel stabilized Downes before he was transported by ambulance to the emergency room.

---

[4] At his deposition, Downes placed a circle on a photograph showing where he sat at the bar prior to his fall. We have attached this photograph as Appendix A to this opinion.

As a result of the fall, Downes underwent spinal fusion surgery in January 2017. He underwent another spinal surgery in January 2019 to alleviate pressure and possible failure of adjacent discs, and to replace "hardware" from the first surgery.

From 2007 to the date of Downes's accident, no one "complained regarding the offsets between the walking surfaces and sand located around the venue." Nor had there been any reports of injuries during this time period from "the bars, barstools, offsets between the walking surfaces and sand, or sand areas located around the venue."

C. *The Experts*

In support of its summary judgment motion, BPE submitted the declaration of Tom Blatchley, a licensed architect. Blatchley performed measurements of the bar area, including the walkway and the sand area around the bar. Based on these measurements, Blatchley opined that there were "adequate clearances" "in the construction of the area in question"; that the size of the barstool appeared to fit "easily" within the width of the walkway; and that a patron would be too far from the bar counter to sit comfortably at the bar if the hind legs of the barstool on which he or she sat were near the edge of the walkway.

In reaching his opinions, Blatchley relied on a diagram ostensibly published by the American Institute of Architects that he determined reflected conditions "similar to those claimed in this case."[5] The diagram depicts a human figure sitting on a barstool. The front legs of the barstool

---

[5] We say "ostensibly" because the diagram appears on the letterhead of MC Consultants Inc., a company for which Blatchley has provided expert services since 2010. As noted, this diagram is *not* based on measurements of the BHG bar taken by Blatchley, BPE's expert.

5

are 8 inches from the bar base, and the back legs are 24 inches from that base, leaving 12 inches from the back legs to what in this case would be the transition between the walkway and the sand. Based on his inspection and analysis, Blatchley opined the BHG bar was fully compliant with "all applicable California Building Code [(CBC)] sections and requirements of the [Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) (ADA)]."

In response to BPE's assertion that the "offset between the sand and the wooden area serves as a visual indicator of the change in elevation" and therefore, was "open and obvious," Downes submitted the declaration of Brad Avrit, a licensed engineer.

Avrit opined the walkway and its transition to sand created a dangerous condition. He maintained that the barstools at BHG were "designed and intended to be used on flat, stable, firm, planar surfaces" such as the walkway and not on sand that was eight inches deep. He added, "If the legs from a chair [i.e., barstool] in the bar area enters the sand, two things will occur. First, the chair will become unstable due to the changes in elevation between the sand level and the wood surface level. Second, the leg (or legs) from the chair will sink into the sand causing it to be stuck in place. The second issue is significant as a chair entering the sand area will likely be due to a patron pushing their chair back away from the bar to get up. If this sinking and sticking occurs, then the motion of the chair will change from backwards sliding, to fixed rotation before a patron is aware of what happened."

Like Blatchley, Avrit also took multiple measurements of the bar area, including the walkway and the barstool's footprint. Avrit measured the walkway and found it was 44 inches wide at its base, or eight inches wider than Blatchley. However, even with the alleged wider walkway, Avrit opined

6

the bar flooring created a dangerous condition because the barstool took up about 50 percent "of the available walkway space," and, accounting for a reasonable amount of legroom of about 20 inches for a larger patron such as Downes, the hindlegs of a patron's barstool would be "*mere inches from the edge of the wooden walkway*." (Italics added.)

Using a "measuring tool," Avrit found it sunk about 1 3/4 inches into the sand due to its "smaller surface area." Based on the ease in which the tool sank into the sand, Avrit opined the combination of the weight of a person sitting on a barstool "and the low surface area of [its] leg[s]" would cause the barstool to sink "several inches" into the sand if its leg or legs left the walkway, thus creating a tripping hazard.

Avrit further opined the bar flooring violated both the CBC and the ADA. He also maintained BPE had a duty to remedy the danger created by the flooring and, as particularly relevant in the instant case, to warn patrons who sat on barstools at the bar of the dangerous condition "immediately behind them."

D. *Summary Judgment*

In its moving papers, BPE argued Downes's negligence cause of action failed "because: 1) Plaintiff cannot establish Defendant owed a duty to prevent him from leaning back while sitting at a barstool; [and] 2) even if a duty is owed, the undisputed facts show Defendant's conduct was not a substantial factor of Plaintiff's harm." Further, BPE argued that Downes's premises liability cause of action failed "because the alleged dangerous condition plead[ed] falls within the scope of the open and obvious defense and trivial defect defense."

7

In opposing summary judgment, Downes did not timely submit a response to BPE's separate statement. His counsel on two occasions—first, at the summary judgment hearing, and second, in a new trial motion—attempted to file the response, and admitted it was untimely due to a "technical problem" with "formatting." However, the court reassured Downes it had considered "all" the facts in this case before granting summary judgment.

In granting the motion, the court found Downes had conceded in his declaration that the "boardwalk joining the sand was an open and obvious condition" because the " 'edge of the deck was flush with the sand in the sand pit, and there was no visible drop-off.' [Citation.] Plaintiff was aware of the transition from boardwalk to sand."

The court then turned to the issue of whether Downes was required out of necessity to encounter the dangerous condition: "Plaintiff argues 'a patron drinking at Defendant's bar, would obviously be required to sit on the deck available.' This argument ignores that there is no evidence the barstools were, as a matter of necessity, positioned on the edge where the boardwalk meets the sand. There is no evidence bar patrons are required to move the barstools to be on this edge. Moreover, there is no evidence bar patrons were required to sit at the bar. Rather, photos of the premises indicate that the bar patrons could sit at areas around the bar that did not approach the transition from boardwalk to sand. Thus, larger patrons could have, if they found this transition was anything more than a trivial defect, avoided it b[y]

simply sitting elsewhere.  Plaintiff has failed to raise an issue of fact as to the application of the open and obvious doctrine."[6]

## II.  DISCUSSION

Downes argues the court erred in granting summary judgment for BPE because a triable issue of material fact exists regarding whether a reasonable person would appreciate the danger created by the bar flooring due to the walkway's solid surface, the 8-inch-deep sand abutting the walkway and its proximity to the bar counter, and the fact the barstools were intended to be used only on the walkway.  Downes thus argues BPE at a minimum had a duty to warn of the dangerous condition.  We agree.

A. *Standard of Review and Summary Judgment*

On appeal from an order granting summary judgment, we apply an independent or de novo standard of review to determine whether triable issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*); *Wiener v. Southcoast Childcare Ctrs., Inc.* (2004) 32 Cal.4th 1138, 1142 (*Wiener*).)  "In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such

---

[6]     The court also found Downes's failure to timely respond to BPE's separate statement provided a separate, albeit discretionary, ground to grant the motion.  (See § 437c (b)(3) ["The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed.  The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed.  Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.  Failure to comply with this requirement may constitute a sufficient ground, in the court's discretion, for granting the motion."].)

inferences [citations], in the light most favorable to the opposing party."
(*Aguilar,* at p. 843.) As such, the court will "liberally construe plaintiff's
evidentiary submissions and strictly scrutinize defendants' own evidence, in
order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor."
(*Wiener,* at p. 1142.) Further, the court must consider "all the evidence set
forth in the moving and opposition papers except that to which objections
have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24
Cal.4th 317, 334.)

Ultimately, the purpose of summary judgment is to "provide courts
with a mechanism to cut through the parties' pleadings in order to determine
whether, despite their allegations, trial is in fact necessary to resolve their
dispute." (*Aguilar, supra,* 25 Cal.4th at p. 843.) A defendant moving for
summary judgment has the initial burden of showing that a cause of action
lacks merit because one or more elements of the cause of action cannot be
established or there is an affirmative defense to that cause of action. (§ 437c,
subd. (o)(1), (2); *Aguilar,* at p. 850.) If the defendant meets that threshold
burden, then the burden shifts to the plaintiff to make a prima facie showing
that a triable issue of fact exists as to the cause of action set forth. (*Aguilar*,
at p. 849.)

"There is a genuine issue of material fact if, and only if, the evidence
would allow a reasonable trier of fact to find the underlying fact in favor of
the party opposing the motion in accordance with the applicable standard of
proof." (*Aguilar, supra,* 25 Cal.4th at p. 845.) "The court may not 'grant[ ]'
the defendants' motion for summary judgment 'based on inferences . . . , if
contradicted by other inferences or evidence, which raise a triable issue as to
any material fact.' " (§ 437c, subd. (c); see *Aguilar,* at p. 856.) Thus, the court
must deny the motion for summary judgment if it concludes that plaintiff's

10

evidence, or inferences from such evidence, raise a triable issue of material fact.  With these principles in mind we turn to the merits.

B. *Premises Liability*

1. <u>The No-Duty Exception to Remedy and/or Warn of an Obviously Dangerous Condition</u>

Beginning in 1968, the Supreme Court held the liability of a possessor of land would be governed by ordinary principles of negligence law, thus abolishing the common law distinctions between the standards of care owed to trespassers, licensees, and invitees.  (See *Rowland v. Christian* (1968) 69 Cal.2d 108, 119 (*Rowland*).)  *Rowland* relied on Civil Code section 1714 as the source of a landowner's duty (*Rowland*, at pp. 111–112), the current version of which provides in part:  "(a) Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

The general duty to exercise ordinary care in the management of one's property is subject to judicially created exceptions, including what has become known as the "open and obvious doctrine" at issue in this case.  Under this doctrine, a possessor of land has no duty to remedy or warn of an obviously dangerous condition.  Stated differently, the "no-duty exception for open and obvious dangerous conditions provides that ' "if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition." ' (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 447 [(*Jacobs*)].)"  (*Zuniga, supra,* 61 Cal.App.5th at pp. 993–994.)  "[T]he rationale for the exception to the general duty of ordinary care is that the foreseeability of harm usually is absent

11

because third parties will perceive the obvious and take action to avoid the danger." (*Id.* at p. 994.)

Judicial Council of California Civil Jury Instruction (CACI) No. 1004 sets forth the no-duty exception for open and obvious conditions of danger. It states:

> "If an unsafe condition of the property is so obvious that a person could reasonably be expected to observe it, then the [owner/lessor/occupier/one who controls the property] does not have to warn others about the dangerous condition.
>
> However, the [owner/lessor/occupier/one who controls the property] still must use reasonable care to protect against the risk of harm if it is foreseeable that the condition may cause injury to someone who because of necessity encounters the condition." (CACI No. 1004.)

Under "Directions for Use," the Judicial Council states CACI No. 1004 should be given along with CACI No. 1001, governing the basic duty of care, "if it is alleged that the condition causing injury was obvious. The first paragraph addresses the lack of a duty to *warn* of an obviously unsafe condition. [Citation.] [¶] The second paragraph addresses when there may be a duty to *take some remedial action*. Landowners may have a duty to take precautions to protect against the risk of harm from an obviously unsafe condition, even if they do not have a duty to warn." (CACI No. 1004, italics added.) Here, we are concerned only with the duty to warn of a dangerous condition.

As is clear from CACI No. 1004, whether an unsafe condition is hidden or obvious is a question of fact for the trier of fact. (See *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704 (*Davis*) [whether a condition is dangerous is ordinarily a question of fact, which may be resolved as a question of law only if reasonable minds can come to but one conclusion];

12

*Balkwill v. City of Stockton* (1942) 50 Cal.App.2d 661, 667 ["when the evidence is so conflicting that different conclusions may reasonably be drawn regarding the dangerous character of the defects . . . , the determination of such questions should be left to the jury"], abrogated by statute on another ground as stated in *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 831); cf. *Jacobs*, *supra*, 14 Cal.App.5th at p. 447 [plaintiffs did not challenge the court's conclusion that the "dangers of the empty swimming pool were *per se* obvious to any adult" and therefore, the issue was "whether there is any evidence from which a trier of fact could find that, as a practical necessity, [the plaintiff] was foreseeably required to expose himself to the danger of falling into the empty pool" by stepping onto the diving board that subsequently collapsed].)

    2. Analysis

The parties do not dispute that BPE owed Downes a general duty of care to maintain the premises of BHG in a reasonably safe condition. The dispute instead centers on whether Downes submitted sufficient evidence to create a triable issue of material fact regarding whether the dangerous condition created by the bar flooring was hidden, as he contends; or whether the dangerousness of the condition was per se obvious because the transition from the walkway to sand was easily observable and marked by contrasting colors, such that no reasonable trier of fact could find otherwise, as BPE contends and as the court found.

Our analysis is informed by *Zuniga*. There, the plaintiff's husband died after being electrocuted when the plaintiffs' 28-foot metal pole advertising their business contacted an overhead power line at an outdoor swap meet. Unlike in the instant case, the issue of whether the power lines were obviously dangerous went to a jury, which was instructed with CACI No.

13

1004 among other instructions. After finding the plaintiff's husband contributorily negligent, the jury awarded the plaintiff about $9.5 million. (*Zuniga*, *supra*, 61 Cal.App.5th at p. 984.)

On appeal, the defendants argued they owed no duty of care to the plaintiffs "because the danger presented by the overhead power line was open and obvious." (*Zuniga*, *supra*, 61 Cal.App.5th at p. 984.) The Court of Appeal, as had the trial court in denying the defendants' new trial motion and motion for judgment notwithstanding the verdict, concluded otherwise, finding there was sufficient evidence to establish it was "not obvious that the line was uninsulated, that it was energized, or that the amount of electricity being transmitted was lethal." (*Ibid.*) Thus, in upholding the jury verdict, the *Zuniga* court concluded a "warning would not have been superfluous, it would have provided information that was not obvious." (*Ibid.*)

Similar to the power lines at issue in *Zuniga* in which a person might *see* the lines but not *appreciate* the danger they pose, a bar patron sitting on a barstool under the circumstances of the instant case might *see* the different bar flooring surfaces. However, the patron may not *appreciate* the danger posed by the two types of flooring due to the depth of the sand and the ease in which a leg of a barstool might sink into the sand.

We conclude there is a factual dispute whether the danger posed by the bar flooring was hidden or obvious. BPE's expert opined the walkway extended 36 inches from the base of the bar counter to the sand, and there was minimal, if any, differences in elevation between the two surfaces, such that any danger was obvious. Downes's expert opined the danger was hidden given the footprint of the barstool, the *depth* of the sand, and its proximity to the walkway. According to Downes's expert, it was reasonably foreseeable the back legs of a barstool would be "mere inches" from the sand when a large

14

bar patron such as Downes sat at the bar, and, if the patron shifted the barstool, its legs could slide off the walkway and become stuck in the sand, causing the patron to fall.

Given this factual dispute, we cannot say as a matter of law a bar patron would appreciate the unsafe condition created by the bar flooring in this case, such that a warning of this condition would have been superfluous. (See *Zuniga*, *supra*, 61 Cal.App.5th at p. 984.) We therefore conclude the court erred in granting summary judgment for BPE.

BPE nonetheless argues there "is sufficient evidence to support the trial court's finding that the transition from deck to sand was open and obvious." However, the issue presented in this case is not whether the "transition from deck to sand was open and obvious," but rather whether this transition created a *dangerous condition* because the 8-inch depth of the sand was not open and obvious. It is for this reason the court erred when it incorrectly ruled Downes conceded "the boardwalk joining the sand was an open and obvious condition."

In addition, the test for whether summary judgment was properly granted in this case is not whether evidence supports the court's finding the condition was open and obvious, but rather whether *Downes* proffered sufficient evidence to sustain *his* burden to show a factual dispute whether the bar flooring was obviously dangerous, giving rise to BPE's duty to warn of the unsafe condition. (See *Aguilar*, *supra*, 25 Cal.4th at pp. 849–850 [once a defendant moving for summary judgment shows a cause of action lacks merit, the burden shifts to the plaintiff to make a prima facie showing that a triable issue of fact exists to defeat summary judgment].) As we have found, Downes has made such a showing in this case.

C. *Additional Grounds Raised by BPE Do Not Warrant Summary Judgment*

BPE argues Downes was not required to sit on a barstool and could have sat in many other places at BHG, as the court also found in granting summary judgment. BPE thus argues it had no duty to *remedy* the dangerous condition because Downes was not required, out of necessity, to confront the purported danger. Because we have found a triable issue of material fact exists whether BPE had a duty to *warn* Downes of the unsafe condition (see CACI, No. 1004; *Zuniga*, 61 Cal.App.5th at p. 984), we decline to decide whether there was a triable issue of fact whether BPE also may have had a duty to remedy that condition.

BPE also relies on the trivial defect doctrine. (See *Skillin v. Rady Children's Hospital & Health Center* (2017) 18 Cal.App.5th 35, 43 ["Because we review 'the ruling, not the rationale,' we may affirm summary judgment on a different basis than the trial court."]; *Kaneko v. Yager* (2004) 120 Cal.App.4th 970, 977 ["The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale."].) Under this doctrine, a property owner is not liable for damages caused by a "minor, trivial or insignificant defect in property." (See *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 ["The 'trivial defect defense' is available to private, nongovernmental landowners."].)

In support, BPE argues the offset between the two contrasting flooring materials varied by no more than 3/4 of an inch, and therefore, this minor difference in elevation was trivial as a matter of law. However, this argument ignores the existence of a triable issue of fact whether the *depth* of the sand and its proximity to the bar counter created a danger of falling such that a property owner had a duty to warn of the unsafe condition.

16

BPE also argues the facts establish as a matter of law that Downes caused the injury.  However, whether Downes was contributorily negligent for his injuries, including as a result of his alcohol consumption served by BPE, is a question for the trier of fact.  (See *Ewing v. Coverleaf Bowl* (1978) 20 Cal.3d 389, 399 [whether a plaintiff is comparatively at fault for his or her injuries is for the trier of fact to decide]; see also *Zuniga*, *supra*, 61 Cal.App.5th at p. 984 [noting the jury found the plaintiffs were 22.5 percent at fault for their injuries and apportioned fault accordingly].)

D.  *Evidentiary Objections Overruled by the Trial Court*

BPE objected to the entirety of Downes's declaration filed in opposition to summary judgment on the ground it allegedly conflicted with his deposition testimony.  (See, e.g., *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087 (*Whitmire*) ["It is well-established that 'a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses.'"].)  The court overruled BPE's objection.  BPE on appeal argues the court erred and renews its objection to the entirety of the declaration.

In support, BPE notes Downes testified at his deposition that immediately before he fell off the barstool, he "shifted the barstool" and then "went over."  On further questioning, Downes also testified he "pushed off the bar" and, while his feet were on the barstool, he fell, but he could not recall the "sensation" of the barstool tipping over or "much after that."

In his declaration opposing summary judgment, Downes stated he "tried to adjust [his] chair and pushed back from the bar to do so," and the leg of the barstool "slipped off the deck into the sand," causing him to fall backwards and hit his head.  It is this alleged inconsistency between

17

Downes's deposition testimony and his declaration that BPE argues rendered the latter evidence inadmissible.

We do not find a "clear[] contradiction[]" exists between Downes's deposition testimony and his declaration. (See *Whitmire*, *supra*, 184 Cal.App.4th at p. 1087.) Although Downes testified at his deposition he could not remember the "sensation" of falling over or "much after that," he was not then asked to give a reason *why* he believed he fell. In addition, that Downes might have used different verbs to describe his conduct immediately before he fell (i.e., he "shifted" his barstool, he "pushed off" the bar, he "adjust[ed]" his barstool), does not create a clear conflict between his deposition testimony and his declaration.

In any event, even if Downes's declaration is discredited on this point, Patrick, who was sitting next to his brother, stated in his declaration he saw the leg of his brother's barstool "slip[] off the wooden planks into the sand" as his brother "attempted to adjust his barstool," and as a result, his brother fell and "hit his head." Thus, there is evidence from a source independent of Downes's declaration regarding the reason he fell off the barstool. (See *Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1525 ["While . . . a trial court [may] disregard declarations by a *party* which contradicts his or her own discovery responses . . . , it does not countenance ignoring *other credible evidence* that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute."].)

BPE also argues the court erred in overruling various objections to portions of Avrit's declaration. As a threshold matter, we decline to address any objection to evidence we have *not* relied on in conducting our de novo review of this case. This includes objections to Avrit's opinions that Downes was unaware of the transition between the walkway and the sand because he

was facing the bar counter; that, due to shifting of the sand, it was possible the elevation of the sand could change such that the two surfaces were not flush; and that the bar flooring violated the CBC because the elevation between the walkway and the sand was greater than 1/4 inch. None of Avrit's opinions on these subject matters has any bearing on our conclusion that a factual dispute exists whether the dangerous condition caused by the bar flooring was hidden or obvious.

BPE also objected to Avrit's opinions that, to sit comfortably on a barstool at the bar, a patron might need up to 20 inches of legroom (measured from the base of the bar), in contrast to the 8 inches shown in the diagram submitted by BPE's expert; and that, based on the measurements of the bar area and the footprint of a barstool, it was foreseeable a patron could be sitting on a barstool positioned "mere inches from the sand."

We conclude the court did not abuse its broad discretion in overruling these two objections. (See *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [the weight of authority, which we follow, applies an abuse of discretion standard of review when a court, in granting or denying summary judgment, exercises its discretion to overrule or sustain an evidentiary objection].) Downes himself stated in his declaration that, because of his size, he pulled his barstool out about a foot and a half (i.e., 18 inches) when he sat down, as he needed the additional legroom; and that he remained in this position for about *four hours* until he fell. Clearly, reasonable minds differ on the amount of legroom a person needs to sit comfortably at the BHG bar. This difference, which in turn impacts how close a barstool's legs are to the sand, is a question for the trier of fact. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 772 ["The trial

19

court's gatekeeping role does not involve choosing between competing expert opinions."].)

Finally, disregarding Avrit's declaration and using Blatchley's measurements, we have found a triable issue whether the bar flooring was openly dangerous. Therefore, admission of Avrit's opinions did not prejudice BPE. (See Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

E. *Failure to Timely Submit a Response to the Separate Statement*

The court also found summary judgment was proper because Downes failed to timely submit a response to BPE's separate statement. (See § 437c(b)(3) [providing in part that failure to respond to a separate statement "may constitute a sufficient ground, in the court's discretion, for granting the motion"].) The court nonetheless stated it had read and considered "all" the facts the parties had submitted in connection with the summary judgment motion.

Here, in conducting our *independent* review of "all" the facts in the record, we have found a triable issue exists whether the dangerous condition created by the depth of the sand and its proximity to the bar counter was hidden or obvious. In light of our decision, and given the strong public policy favoring a decision on the merits rather than on a procedural deficiency, we conclude the court erred in separately granting summary judgment under subdivision (b)(3) of section 437c. (See, e.g., *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 [concluding the court abused its discretion in denying the plaintiff's request for a continuance of the defendant's summary

judgment motion in order to conduct additional discovery, reasoning a court "must abide by the guiding principle of deciding cases on their merits rather than on procedural deficiencies" and "[w]hen the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency."].)[7]

### III.  DISPOSITION

We reverse the summary judgment and cost award for BPE.  Downes to recover his costs on appeal.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


GUERRERO, J.

---

[7]     In light of our decision, we conclude Downes's opposed motion for this court to consider additional documentary evidence—his three-page response to BPE's separate statement—is moot.  In addition, because we reverse summary judgment, the fee award for BPE cannot stand.  (See *Rich v. Schwab* (1984) 162 Cal.App.3d 739, 745 [reversal of summary judgment also required reversal of an award of costs and attorney fees, "there being no prevailing party at this stage"].)